1

2

3

4

5

6

7
                                                    The Honorable John C. Coughenour
8

9                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
10                                      AT SEATTLE

11

12   WASHINGTON CATTLEMEN'S              No. 2:19-CV-0569-JCC
     ASSOCIATION,
13                                       DEFENDANTS' OPPOSITION TO
                   Plaintiff,            PLAINTIFFS' SECOND MOTION FOR
14                                       PRELIMINARY INJUNCTION
          v.
15                                       NOTE ON MOTION CALENDAR:
     UNITED STATES ENVIRONMENTAL         JULY 24, 2020
16   PROTECTION AGENCY, et al.,

17                 Defendants.

18        And

19   PUGET SOUNDKEEPER ALLIANCE,
20   IDAHO CONSERVATION LEAGUE, and
     SIERRA CLUB,
21
                   Defendant-
22                 Intervenors.

23

24

25

26

Opposition to Plaintiff's Second                    U.S. Dept. of Justice/ENRD
Motion for Preliminary Injunction                         P.O. Box 7611
2:19-CV-0569-JCC                                    Washington, D.C. 20044
                                                        (202) 514-1806
                              i

# TABLE OF CONTENTS

Table of Contents.................................................................................................ii

Introduction........................................................................................................1

Background .........................................................................................................3

    I.      Statutory and Regulatory Background.....................................................3

          A.      Clean Water Act................................................................................3

          B.      Prior Regulatory Definitions of "Waters of the United States" and Litigation................................................................4

               1.      The 1980s Regulations.....................................................4

               2.      The 2015 Rule....................................................................5

               3.      The Repeal Rule and Navigable Waters Protection Rule..................................................................................6

    II.      Procedural History ..................................................................................8

Standard of Review.............................................................................................8

Argument .............................................................................................................9

    I.      The Court Lacks Jurisdiction over Plaintiff's Challenge to the NWPR.....................................................................................................9

          A.      Plaintiff's Claims Are Unripe. .....................................................9

          B.      Plaintiff Lacks Standing................................................................11

    II.      Plaintiff Is Unlikely to Succeed on the Merits.......................................12

          A.      *Chevron* Requires Deference to the Agencies' Reasonable Interpretation................................................................13

               1.      The NWPR Does Not Exceed the Permissible Limits of the CWA....................................................................13

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

ii

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

2.  The Agencies' Revised Regulatory Definition of "Waters of the United States" Is a Permissible Construction of Ambiguous Statutory Terms. ...............20

B.  The NWPR Reasonably Defines "Tributary" To Include Intermittent Flow and "Adjacent Wetlands" to Include Certain Non-Abutting Wetlands. ................................................22

C.  Issue Preclusion Does Not Bar the NWPR. ...............................24

III.  Plaintiff Fails to Demonstrate Imminent, Irreparable Harm from the NWPR. ........................................................................................26

A.  Plaintiff's Allegations of Irreparable Harm Are Premature........26

B.  Plaintiff Fails to Show Imminent, Irreparable Harm from the NWPR. .........................................................................................29

C.  Plaintiff's Alleged Injuries Are Not Irreparable. .......................31

IV.  The Balance of Equities Weighs in Favor of the Agencies, and Issuance of the Injunction Requested by Plaintiff Would Harm the Public Interest. .......................................................................................32

V.  Even if Preliminary Injunctive Relief Is Awarded, the Remedies Proposed by Plaintiff Are Overbroad and Not Appropriately Tailored. .........................................................................................34

Conclusion .........................................................................................................35

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

iii

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

**CASES**

*All. Of Auto. Mfrs. v. Hull,*
   137 F. Supp. 2d 1165 (D. Ariz. 2001) .................................................................. 32

*Am. Petroleum Inst. v. Jorling*,
   710 F. Supp. 421 (N.D.N.Y. 1989) ...................................................................... 32

*Am. Trucking Ass'ns v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ................................................................................ 8

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*,
   893 F. Supp. 301 (D.N.J. 1995) .......................................................................... 32

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ............................................................................... 35

*California v. Wheeler*,
   No. 3:20-cv-03005, 2020 WL 3403072 (N.D. Cal. June 19, 2020)............... 8, 23, 34

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ............................................................................... 30

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984).............................................................................. 13, 20, 22

*Citicorp Servs., Inc. v. Gillespie*,
   712 F. Supp. 749 (N.D. Cal. 1989) ...................................................................... 32

*City & Cty. of S.F. v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ......................................................................... 34, 35

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)............................................................................................. 11

*Colorado v. EPA*,
   No. 1:20-cv-01461, 2020 WL 3402325 (D. Colo. June 19, 2020)
   *appeal docketed*, No. 20-1238 (10th Cir.) ............................................................ 8

*Cty. of Maui, Hawaii v. Haw. Wildlife Fund*,
   140 S. Ct. 1462 (2020)......................................................................................... 19

*E. Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ............................................................................. 33

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

iv

*Entergy Corp. v. Riverkeeper, Inc.*,
   556 U.S. 208 (2009) ........................................................................................ 20

*Feldman v. Arizona Sec'y of State's Office*,
   842 F.3d 613 (9th Cir. 2016) .......................................................................... 33

*Georgia v. Wheeler*,
   418 F. Supp. 3d 1336 (S.D. Ga. Aug. 21, 2019) ............................................... 6

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
   452 U.S. 264 (1981) ........................................................................................ 17

*In re EPA & Dep't of Def. Final Rule*,
   803 F.3d 804 (6th Cir. 2015) ............................................................................ 6

*In re EPA & Dep't of Def. Final Rule*,
   713 F. App'x 489 (6th Cir. 2018) ...................................................................... 6

*Indep. Acceptance Co. v. California*,
   204 F.3d 1247 (9th Cir. 2000) .......................................................................... 9

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010) .......................................................................... 11

*Marks v. United States*,
   430 U.S. 188 (1977) .................................................................................... 3, 15

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) ......................................................................................... 9

*Mayo Found. for Med. Educ. & Research v. United States*,
   562 U.S. 44 (2011) ......................................................................................... 20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ......................................................................................... 22

*Nat'l Ass'n of Home Builders v. EPA*,
   667 F.3d 6 (D.C. Cir. 2011) ...................................................................... 11, 12

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   138 S. Ct. 617 (2018) .......................................................................... 6, 19, 34

*Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) .................................... 2, 12, 13, 15, 18, 20, 21, 22, 23

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ......................................................................................... 9

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

v

*Nat. Res. Def. Council, Inc. v. EPA*,
    863 F.2d 1420 (9th Cir. 1988) ........................................................................... 17

*New York State Bar Ass'n v. Reno*,
    999 F. Supp. 710 (N.D.N.Y. 1998) ................................................................... 26

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................... 32

*N. Cal. River Watch v. City of Healdsburg*,
    496 F.3d 993 (9th Cir. 2007) ............................................................................. 16

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*,
    817 F. Supp. 2d 1290 (D. Or. 2011) .................................................................. 27

*Prof'l Towing & Recovery Operators of Ill. v. Box*,
    No. 08 C 4096, 2008 WL 5211192 (N.D. Ill. Dec. 11, 2008) ........................... 32

*Puget Soundkeeper Alliance v. Wheeler*,
    No. C15-1342-JCC, 2019 WL 6310562 (W.D. Wash. Nov. 25, 2019) ............ 6, 12

*Rapanos v. United States*,
    547 U.S. 715 (2006) .................................................................................. *passim*

*Sacks v. Office of Foreign Assets Control*,
    466 F.3d 764 (9th Cir. 2006) ............................................................................. 10

*San Diego Cty. Gun Rights Comm'n v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ............................................................................. 11

*Sassman v. Brown*,
    73 F. Supp. 3d 1241 (E.D. Cal. 2014) ............................................................... 31

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    990 F. Supp. 2d 9 (D.D.C. 2013) ...................................................................... 33

*Sierra Forest Legacy v. Rey*,
    577 F.3d 1015 (9th Cir. 2009) ............................................................................. 8

*S.O.C., Inc. v. Cty. of Clark*,
    152 F.3d 1136 (9th Cir. 1998) ........................................................................... 31

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs (SWANCC)*,
    531 U.S. 159 (2001) ................................................... 4, 5, 13, 14, 17, 20, 21, 23

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ....................................................................................... 11

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

vi

*State Nat'l Bank of Big Spring v. Lew*,
   958 F. Supp. 2d 127 (D.D.C. 2013) ...................................................................... 10

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ............................................................................ 33

*Texas v. EPA*,
   389 F. Supp. 3d 497 (S.D. Tex. 2019) ................................................................... 6

*Texas v. United States*,
   523 U.S. 296 (1998) ............................................................................................ 26

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ............................................................................ 10

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ........................................................................................ 35

*U.S. Army Corps. v. Hawkes Co., Inc.*,
   136 S. Ct. 1807 (2016) .................................................................................. 1, 19

*U.S. Dep't of Def. & EPA Final Rule*,
   713 F. App'x 489 (6th Cir. 2018) .......................................................................... 6

*U.S. Philips Corp. v. KBC Bank N.V.*,
   590 F.3d 1091 (9th Cir. 2010) ............................................................................ 31

*United States v. Bailey*,
   571 F.3d 791 (8th Cir. 2009) .............................................................................. 16

*United States v. Cundiff*,
   555 F.3d 200 (6th Cir. 2009) .............................................................................. 17

*United States v. Davis*,
   825 F.3d 1014 (9th Cir. 2016) ............................................................................ 16

*United States v. Donovan*,
   661 F.3d 174 (3d Cir. 2011) ............................................................................... 16

*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) ...................................................................................... 20, 21

*United States v. Gerke Excavating, Inc.*,
   464 F.3d 723 (7th Cir. 2006) .............................................................................. 16

*United States v. Johnson*,
   467 F.3d 56 (1st Cir. 2006) ................................................................................. 16

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

vii

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

*United States v. Jones*,
231 F.3d 508 (9th Cir. 2000) ................................................................ 17

*United States v. Mendoza*,
464 U.S. 154 (1984) ............................................................................ 24

*United States v. Nat'l Treasury Emps. Union*,
513 U.S. 454 (1995) ............................................................................ 34

*United States v. Riverside Bayview Homes, Inc.*,
474 U.S. 121 (1985) ............................................ 4, 13, 14, 20, 21, 22, 24

*United States v. Robertson*,
875 F.3d 1281 (9th Cir. 2017), *cert. granted, judgment vacated*, 139 S. Ct. 1543 (2019),
*vacated as moot*, 773 F. App'x 391 (9th Cir. 2019) ........................ 15, 16

*United States v. Robison*,
505 F.3d 1208 (11th Cir. 2007) .......................................................... 16

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ............................................................................ 34

*Winter v. NRDC*,
555 U.S. 7 (2008) ................................................................................ 8


**STATUTES**

5 U.S.C. § 706(2)(A), (C) ..................................................................... 9

33 U.S.C. §§ 1251 *et. seq.* .................................................................. 3

33 U.S.C. § 1251(a) ............................................................................. 3

33 U.S.C. § 1251(b) ......................................................................... 3, 18

33 U.S.C. § 1311(a) ............................................................................. 3

33 U.S.C. § 1344(f) ............................................................................ 28

33 U.S.C. § 1344(f)(1) ....................................................................... 29

33 U.S.C. § 1344(f)(1)(A) ................................................................... 29

33 U.S.C. § 1362(7) ................................................................... 2, 3, 13

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

viii

**RULES**

Fed. R. Evid. 601 ................................................................................................ 11


**CODE OF FEDERAL REGULATIONS**

33 C.F.R. § 325.1 ............................................................................................... 11

33 C.F.R. § 328.3 ................................................................................................. 1

33 C.F.R. § 328.3(3) (1987) ................................................................................. 1

33 C.F.R. § 328.3(a) (1987) ................................................................................. 4

33 C.F.R. § 328.3(a)(2), (c) (2019) ..................................................................... 26

33 C.F.R. § 328.3(a)(2), (c)(12) (2020) ............................................................... 25

33 C.F.R. § 328.3(a)(4), (c)(1) (2020) ................................................................. 26

33 C.F.R. § 328.3(a)(5) (2019) ............................................................................ 25

33 C.F.R. § 328.3(b)(3) (2020) ............................................................................ 30

33 C.F.R § 328.3(c) (2019) .................................................................................. 26

33 C.F.R § 328.3(c)(1) (2020) ............................................................................. 23

40 C.F.R. § 232.2(q) (1988) ................................................................................. 4


**FEDERAL REGISTERS**

42 Fed. Reg. 37,122 (July 19, 1977) .................................................................... 4

80 Fed. Reg. 37,054 (June 29, 2015) .................................................................... 5

83 Fed. Reg. 5200 (Feb. 6, 2018) ......................................................................... 6

84 Fed. Reg. 56,626 (Oct. 22, 2019) ................................................................. 6, 7

85 Fed. Reg. 22,250 (Apr. 21, 2020) ...................... 1, 7, 14, 18, 19, 21, 23, 24, 25, 26, 28, 29, 33

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

ix

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

**OTHER AUTHORITIES**

11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013).........................32

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

x

# GLOSSARY

| | |
|---|---|
| 2015 Rule | Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) |
| CWA | Clean Water Act |
| EA | Economic Analysis for the Navigable Waters Protection Rule: Definition of "Waters of the United States," *available at* https://www.epa.gov/nwpr/navigable-waters-protection-rule-supporting-documents |
| Mot. | Plaintiff's Motion for Preliminary Injunction, Dkt. No. 77 (June 15, 2020) |
| NWPR | Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) |
| Repeal Rule | Definition of "Waters of the United States"—Recodification of Pre-existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019) |
| RTC | Response to Comments for the Navigable Waters Protection Rule: Definition of "Waters of the United States," *available at* https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11574 |

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

xi

1  Defendants (the "Agencies") respectfully request that the Court deny Plaintiff's motion,

2  Dkt. No. 77 ("Mot."), which seeks to preliminarily enjoin, in part, the Navigable Waters

3  Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020)

4  ("NWPR").

## INTRODUCTION

5

6  The NWPR brings decades of debate regarding the jurisdictional limits of the Clean Water

7  Act ("CWA") to a close. Going forward, anyone wondering whether a water or wetland

8  constitutes a "water of the United States" subject to CWA permitting will be able to pull out the

9  Code of Federal Regulations and review 33 C.F.R. § 328.3.[1] And in more cases than before, those

10  regulations alone will tell them if a CWA permit is needed to discharge into a particular water.

11  The Agencies' 1986 regulations themselves, by contrast, did not provide the same level of clarity.

12  Those regulations set an indeterminate jurisdictional boundary around all waters "which could

13  affect interstate or foreign commerce." *See*, *e.g.*, 33 C.F.R. § 328.3(3) (1987). The "notoriously

14  unclear" regime of "significant nexus" inaugurated by the Supreme Court's 2006 *Rapanos*

15  decision further muddied the waters, *see U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S.

16  Ct. 1807, 1816 (2016) (Kennedy, J., concurring), spawning years of litigation over the extent of

17  jurisdictional waters.

18  The NWPR—including the clarity and consistency of a regulatory regime with fewer

19  transaction costs and fewer consultants—will be a significant public benefit with comparable

20  environmental protection together with any protective state regulatory regimes. *See* Economic

21  Analysis at 171-182 (Quantitative Assessment of Potential National Impacts) (hereinafter "EA")

22  (*available      at*      https://www.epa.gov/nwpr/navigable-waters-protection-rule-supporting-

23  documents). The Agencies' well-reasoned, well-explained, and legally well-supported new

24

25  [1] The NWPR codified the definition of "waters of the United States" in two places in the CFR—
26  Title 33 (which implements the Corps' statutory authority) and Title 40 (which generally
implements the EPA's statutory authority).

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1

1  definition of "waters of the United States" under the CWA, 33 U.S.C. § 1362(7), should be

2  affirmed. And Plaintiff's motion for preliminary injunction should be denied.

3      What constitutes a "water of the United States" is a textbook example of statutory

4  ambiguity for which agencies are "delegat[ed] . . . authority to . . . fill the statutory gap in

5  reasonable fashion." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967,

6  980 (2005). Thus, the question for this Court on the merits is whether the NWPR is a reasonable

7  construction of the CWA. Such "agency construction" will displace even prior *judicial* decisions

8  unless such a holding "follow[ed] from the unambiguous terms of the statute and thus leaves no

9  room for agency discretion." *Id.* at 982.

10     Plaintiff argues that a four-Justice plurality opinion from the Supreme Court's *Rapanos*

11 decision marks a hard edge to the Agencies' statutory authority under the CWA. Not a single

12 court of appeals to previously consider this question agrees with Plaintiff. Plaintiff nevertheless

13 says this plurality opinion, in effect, "leaves no room for" the NWPR's definition of "waters of

14 the United States." That is incorrect. To be sure, five Justices expressed that there are limits to

15 the Agencies' authority under the CWA. Those limits stem from Congress' use of the term

16 "navigable waters" in the statute. *Rapanos v. United States*, 547 U.S. 715, 730-31 (Scalia, J.,

17 plurality), 760-61 (Kennedy, J., concurring) (2006). But one Justice expressed that "[a]bsent *more*

18 *specific regulations*, . . . the Corps must establish a significant nexus on a case-by-case basis when

19 it seeks to regulate wetlands based on adjacency to nonnavigable tributaries." *Id.* at 782 (Kennedy,

20 J., concurring) (emphasis added). And though the Chief Justice joined the four-Justice plurality,

21 he separately concurred. He wrote the Agencies should be given "generous leeway by the courts"

22 to "develop[] *some* notion of an outer bound to the reach of their authority." *Id.* at 758 (Roberts,

23 C.J., concurring). In promulgating the NWPR, the Agencies heeded Chief Justice Roberts. They

24 established an appropriate outer bound to the reach of their authority.

25

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1    Plaintiff also insists that under *Marks v. United States*, 430 U.S. 188 (1977) and the

2    doctrine of constitutional avoidance, the *Rapanos* plurality controls. That is the wrong inquiry

3    here. No Court deciding which opinion controls has ever held that the *Rapanos* plurality controls.

4    Plaintiff also fails to meet the high bar of showing imminent and irreparable harm.

5    Significantly, Plaintiff has failed to identify a single member that actually claims to be harmed by

6    the NWPR. There is no evidence that any of Plaintiff's members intend to conduct a project

7    requiring a CWA permit under the NWPR. And Plaintiff's members' descriptions of their farming

8    projects and water features found on their properties are so vague, it is impossible to discern if

9    Plaintiff's members conduct activities regulated by the CWA in waters that are now jurisdictional

10   under the NWPR. This lack of specificity falls woefully short of showing irreparable harm. For

11   similar reasons, Plaintiff lacks standing and this case is unripe.

12   Finally, Plaintiff fails to show that the balance of harms and the public interest weigh in

13   favor of a preliminary injunction. The public and governments will receive more benefits from

14   replacing the "significant nexus" standard with the clearer lines the NWPR draws. *See* EA at xiv-

15   xxiii. And, Plaintiff's requested relief is overbroad. Accordingly, Plaintiff's motion for

16   preliminary injunction should be denied.

## BACKGROUND

17

18   **I.    Statutory and Regulatory Background**

19      **A.    Clean Water Act**

20      Congress enacted the CWA, 33 U.S.C. §§ 1251 *et seq*., with the objective "to restore and

21   maintain the chemical, physical, and biological integrity of the Nation's waters," *id*. § 1251(a),

22   while declaring its policy to "recognize, preserve, and protect the primary responsibilities and

23   rights of States to prevent, reduce, and eliminate pollution." *Id*. § 1251(b). The Act prohibits "the

24   discharge of any pollutant by any person," *id*. § 1311(a), to a subset of the Nation's waters

25   identified as the "navigable waters," which "means the waters of the United States." *Id.* § 1362(7).

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

3

**B.**     **Prior Regulatory Definitions of "Waters of the United States" and Litigation**

       **1.**     **The 1980s Regulations**

The Corps first promulgated regulations defining "waters of the United States" in the 1970s. *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977). In the late 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition. *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations").

Over time, the Agencies refined their application of the regulatory definition of "waters of the United States," as informed by three Supreme Court decisions. In *Riverside Bayview*, the Court deferred to the Corps' assertion of jurisdiction over wetlands abutting a traditional navigable water. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131-35 & n.9 (1985). But in *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) ("*SWANCC*"), the Court rejected the Corps' assertion of CWA jurisdiction over non-navigable, isolated, intrastate ponds and concluded that "the text of the statute will not allow" the federal government to extend CWA jurisdiction to "ponds that are not adjacent to open water." *Id.* at 168.

A few years later, in *Rapanos*, the Supreme Court assessed the Corps' assertion of jurisdiction over four wetlands pursuant to the 1986 Regulations. *Rapanos*, 547 U.S. at 719-20, 729-30. Both the plurality and Justice Kennedy determined that the Corps' application of the regulatory definition exceeded the scope of the CWA and that the cases should be remanded. *Id.* at 757; *id.* at 786-87 (Kennedy, J., concurring). The plurality stated that "the traditional term 'navigable waters' . . . carries *some* of its original substance" and "includes, at bare minimum, the ordinary presence of water." *Id.* at 734 (Scalia, J., plurality). At the same time, the plurality stated the term "waters of the United States" does "not necessarily exclude *seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months." *Id.* at 732 n.5. Thus, the plurality would have limited "waters of the United States" to traditional

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

4

navigable waters and those "relatively permanent bod[ies] of water connected to traditional interstate navigable waters" and "wetlands with a continuous surface connection" to such relatively permanent waters. *Id.* at 739, 742. The plurality would have excluded from jurisdiction "[w]etlands with only an intermittent, physically remote hydrologic connection to 'waters of the United States.'" *Id.* at 742.

In concurring, Justice Kennedy opined that jurisdiction extends to waters that have a "'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id.* at 759 (Kennedy, J., concurring); *id.* at 779 ("[T]he word 'navigable' in the Act must be given some effect"). But Justice Kennedy rejected "the dissent" view that the CWA "would permit federal regulation whenever wetlands lie alongside a ditch or drain, however remote and insubstantial, that eventually may flow into traditional navigable waters." *Id.* at 778. Indeed, the dissent found the Corps' broad regulations "reasonable," and would have upheld the findings of jurisdiction. *Id.* at 810 (Stevens, J., dissenting).

Though joining the four-Justice plurality, in his *Rapanos* concurrence, Chief Justice Roberts criticized the Agencies for their failure to use the "generous leeway by the courts in interpreting the statute" to "develop[] *some* notion of an outer bound to the reach of their authority" following the Court's *SWANCC* decision. *Id.* at 757-58 (Roberts, C.J., concurring). In developing the NWPR, the Agencies set out to heed Chief Justice Roberts's critique.

## 2.    The 2015 Rule

In 2015, the Agencies revised the regulatory definition of "waters of the United States." *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). The 2015 Rule claimed reliance on the Agencies' interpretation of Justice Kennedy's "significant nexus" discussion as its legal touchstone. *See id.* at 37,060. Multiple parties sought judicial review of the 2015 Rule in district courts across the country, including Plaintiff in *Washington Cattlemen's Ass'n v. EPA*, No. 0:15-cv-03058 (D. Minn.), and later in this case. Dkt. No. 1 at 10. Plaintiff and other parties also filed petitions for review in the

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

5

courts of appeals. *Id.* In October 2015, the Sixth Circuit stayed the 2015 Rule nationwide. *See In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804, 808-09 (6th Cir. 2015). The Agencies then returned to their longstanding practice of applying nationwide the 1986 Regulations' definition of "waters of the United States," as informed by applicable agency guidance documents and consistent with Supreme Court decisions and longstanding agency practice. *See* 83 Fed. Reg. 5200, 5201 (Feb. 6, 2018). After the Supreme Court ruled that challenges to the 2015 Rule must be brought in district court, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 624 (2018), the Sixth Circuit vacated its nationwide stay. *In re U.S. Dep't of Def. & EPA Final Rule*, 713 F. App'x 489, 490-91 (6th Cir. 2018).

Two courts eventually ruled on the 2015 Rule on summary judgment. They concluded that the rule was "unlawful" and remanded the 2015 Rule back to the Agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. Aug. 21, 2019); *Texas v. EPA*, 389 F. Supp. 3d 497, 503-06 (S.D. Tex. 2019). The various grounds given by the Southern District of Georgia included that "the definition of waters of the United States in the [2015] WOTUS Rule extends beyond the [Agencies'] authority under the CWA." *Georgia*, 418 F. Supp. 3d at 1360.

This Court also recently dismissed a challenge to the 2015 Rule on standing grounds, finding among other things that none of the plaintiff's members had identified "any project, proposed or existing, that is causing or will soon cause the harms he is concerned about." *Puget Soundkeeper Alliance v. Wheeler*, No. C15-1342-JCC, 2019 WL 6310562, at *7 n.8 (W.D. Wash. Nov. 25, 2019).

### 3.       The Repeal Rule and the Navigable Waters Protection Rule

In 2017, the Agencies began reconsidering the 2015 Rule. They conducted a notice-and-comment rulemaking process. And, taking into consideration the court orders remanding the 2015 Rule, the Agencies issued a final rule repealing the 2015 Rule and reinstating the pre-2015 Rule regulatory definition of "waters of the United States." *See* 84 Fed. Reg. 56,626, 56,626 (Oct. 22, 2019) ("Repeal Rule") ("The agencies will implement the pre-2015 . . . regulations informed by

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

6

1 applicable agency guidance documents and consistent with Supreme Court decisions and

2 longstanding agency practice."). The Repeal Rule went into effect on December 23, 2019. *Id.* at

3 56,626. Multiple parties have sought judicial review of the Repeal Rule in various district courts.

4 On January 23, 2020, the Agencies signed a final rule—the Navigable Waters Protection

5 Rule (NWPR)—that defines "waters of the United States." The NWPR was published in the

6 Federal Register on April 21, 2020, and went into effect on June 22, 2020, 85 Fed. Reg. 22,250

7 (Apr. 21, 2020), except in the state of Colorado where a preliminary injunction applies (*see infra*

8 at 8). The NWPR defines the limits of federal jurisdiction consistent with the Constitution, CWA,

9 and case law, including both the plurality and concurring opinions in *Rapanos*. It establishes four

10 clear categories of jurisdictional waters that improve regulatory certainty. Specifically, the Rule

11 defines the "waters of the United States" as: "(1) The territorial seas and traditional navigable

12 waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional

13 waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are

14 themselves wetlands)." *Id*. at 22,273. The Rule also specifies "exclusions for many water features

15 that traditionally have not been regulated, and define[s] the operative terms used in the regulatory

16 text." *Id.* at 22,270/3; *see also id.* at 22,340-41 (regulatory text). Ephemeral features are

17 categorically excluded from CWA jurisdiction under the NWPR. *Id.* at 22,340/1.

18 The NWPR presents "a unifying legal theory for federal jurisdiction over those waters and

19 wetlands that maintain a sufficient surface water connection to traditional navigable waters or the

20 territorial seas." 85 Fed. Reg. at 22,252/1. But it is not a rote adoption of the *Rapanos* plurality's

21 test. For example, the NWPR includes "intermittent" tributaries that "flow[] continuously during

22 certain times of the year and more than in direct response to precipitation (*e.g*., seasonally when

23 the groundwater table is elevated or when snowpack melts)." *Id.* at 22,338. The NWPR also

24 includes "adjacent wetlands" that are "inundated by flooding" from a jurisdictional water during

25 "a typical year," and those separated from a jurisdictional water "only by a natural berm, bank,

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

7

1   dune, or similar natural feature." *Id.* at 22,338. The Agencies fully explained their reasons for

2   this. *See*, *e.g.*, *id.* at 22,303-04.

3   **II.   Procedural History**

4          Plaintiff initiated this lawsuit on April 16, 2019, challenging the 2015 Rule. Dkt. No. 1.

5   Plaintiff then moved to preliminarily enjoin the 2015 Rule. *See* Dkt. No. 15. On December 30,

6   2019, the Court denied Plaintiff's first motion for preliminary injunction on the grounds that the

7   Repeal Rule rendered the motion "moot." Dkt. No. 61.

8          Plaintiff also filed two supplemental complaints. First, on December 20, 2019, Plaintiff

9   added claims to its complaint, challenging the Repeal Rule. Dkt. No. 60. Second, on May 4, 2020,

10  Plaintiff added claims challenging portions of the NWPR. Dkt. No. 72. Plaintiff filed the instant

11  motion for preliminary injunction on June 15, 2020. Dkt. No. 77. Other parties have challenged

12  the NWPR in various district courts. One court denied a preliminary injunction in a challenge

13  brought by 17 states (including Washington), finding those claims unlikely to succeed on the

14  merits. *California v. Wheeler*, No. 3:20-cv-03005, 2020 WL 3403072, at *5-8 (N.D. Cal. June

15  19, 2020). Another court granted a preliminary injunction in Colorado, staying the effective date

16  of the NWPR only in the state of Colorado. *Colorado v. EPA*, No. 1:20-cv-01461, 2020 WL

17  3402325 (D. Colo. June 19, 2020) *appeal docketed*, No. 20-1238 (10th Cir.).

                            **STANDARD OF REVIEW**

18

19         To obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to

20  succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of

21  preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the

22  public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Courts must consider all four *Winter*

23  factors, *see Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1019 (9th Cir. 2009), and may not issue

24  an injunction based on the mere possibility of irreparable injury. *See Am. Trucking Ass'ns, Inc. v.

25  City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

8

In assessing Plaintiff's likelihood of success on the merits, the Court must apply the Administrative Procedure Act ("APA") standard, 5 U.S.C. § 706(2)(A), (C). Agency action may be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376 n.21 (1989). This standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (internal quotation marks and citations omitted).

## ARGUMENT

## I.    The Court Lacks Jurisdiction over Plaintiff's Challenge to the NWPR.

Plaintiff's motion for preliminary injunction must be denied and its complaint dismissed for lack of subject matter jurisdiction. It has failed to establish any ripe injury that is fairly traceable to and redressable by enjoining the NWPR provisions specifically. Thus, this case is not ripe for judicial review and Plaintiff lacks standing.

### A.    Plaintiff's Claims Are Unripe.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). "[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id.* at 808. Here, Plaintiff has failed to identify how the NWPR would harm or threaten it in a concrete manner.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1    First, Plaintiff has not identified a single, imminent project requiring a CWA section 402

2    or 404 permit. Plaintiff appears to suggest that simply because the NWPR exists and could

3    theoretically subject Plaintiff's members to CWA permitting requirements, Plaintiff's challenge

4    is ripe for review. Mot. at 8-9. But "neither the mere existence of a proscriptive statute nor a

5    generalized threat of prosecution satisfies" the constitutional ripeness requirement. *Thomas v.*

6    *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Without a "concrete

7    plan" indicating Plaintiff's intent to seek CWA permitting as a result of the NWPR, Plaintiff's

8    claim is not ripe for review. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th

9    Cir. 2006). Indeed, none of the declarations cited in support of Plaintiff's Motion even suggest

10   that Plaintiff's members intend to engage in activities in the imminent future that require CWA

11   permitting as a result of the NWPR. *See* Mot. at 8-9. (citing Ledgerwood Decl. ¶¶ 2-4 (Dkt. No.

12   16); Stokes Decl. ¶¶ 3, 4, 10 (Dkt. No. 17); Supp. Ledgerwood Decl. ¶¶ 2-9 (Dkt. No. 36); and

13   Supp. Stokes Decl. ¶ 2-14 (Dkt. No. 37)).[2] And based upon its members' descriptions of their

14   own respective properties, the waters in question may well no longer be considered "waters of the

15   United States" under the NWPR and may no longer be subject to CWA jurisdiction. *See generally*

16   *id.* Without identifying a "concrete action" applying the regulation to the Plaintiff, its claim is not

17   ripe for review.

18   Second, Plaintiff's claim that seeking a "time-consuming and costly" Approved

19   Jurisdictional Determination from the Corps is a harm ripe for review is without merit. Mot. at

20   33. The effort to determine whether the CWA applies to Plaintiff's members' activities based on

21   the NWPR's definition of "waters of the United States" is *not* a cognizable injury. *See State Nat'l*

22   *Bank of Big Spring v. Lew*, 958 F. Supp. 2d 127, 153 (D.D.C. 2013) ("[A] plaintiff should not be

23   able to achieve standing to litigate an injury based on the cost of figuring out whether it has an

24

25   _____

26   [2] The cited declarations were all submitted in support of Plaintiff's first motion for preliminary
     injunction challenging the 2015 Rule, not the NWPR. The claimed injuries set forth in those
     declarations do not arise out of the NWPR and thus are not applicable to this motion.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

injury."), *aff'd in part, rev'd in part*, 795 F.3d 48 (D.C. Cir. 2015). And, regardless, any such theoretical injury is not actually *caused* by the NWPR. Seeking either a determination of whether the CWA covers particular waters or a permit "are the same statutory and regulatory alternatives [Plaintiff's] members faced before the [NWPR]." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 14 (D.C. Cir. 2011). In any event, Plaintiff has no foundation to make that claim. Fed. R. Evid. 601. The Corps does not charge for issuing an Approved Jurisdictional Determination, nor does it require parties to obtain one. *See* 33 C.F.R. § 325.1 (setting fees for regulatory program applications, but not Jurisdictional Determinations). Plaintiff's claims are unripe for review.

### B.  Plaintiff Lacks Standing.

Similarly, Plaintiff lacks standing to challenge the NWPR because it has failed to demonstrate that at least one of its members has suffered a "concrete" or "immediate" injury in fact necessary to establish standing. To establish standing at the preliminary injunction stage, a plaintiff must make a "clear showing" of his injury in fact. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). "'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted) (emphasis in *Clapper*). Injury must also be "particularized," meaning it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).

Here, Plaintiff has proffered no competent evidence even suggesting that the NWPR will *cause* a "concrete and particularized" and "actual or imminent" threat to any of Plaintiff's members. *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1133 (9th Cir. 1996). While Plaintiff cites a number of declarations previously docketed in this proceeding, *see* Mot. at 8-9 (citing Ledgerwood Decl. ¶¶ 2-4 (Dkt. No. 16); Stokes Decl. ¶¶ 3, 4, 10 (Dkt. No. 17); Supp. Ledgerwood Decl. ¶¶ 2-9 (Dkt. No. 36); Supp. Stokes Decl. ¶ 2-14 (Dkt. No. 37)), none of these declarants actually claim harm as a result of the NWPR. Rather, they all claim injury as a result of the 2015 Rule, not the NWPR. *See, e.g.*, Ledgerwood Decl. ¶ 4 (only noting that should the

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

11

2015 Rule take effect, he, along with other Plaintiff members, will likely be required to seek CWA Section 404 permits not previously subject to CWA permitting and will have to curtail operations). Without even an allegation that Plaintiff's members would be harmed by the NWPR, there can be no finding of a "concrete" and "imminent" harm to Plaintiff as a result of the NWPR.

Furthermore, Plaintiff has offered nothing to show that any projects in purported "intermittent streams" or "non-abutting wetlands" on its members' properties could be subject to CWA regulation under the NWPR. *See Home Builders v. EPA*, 667 F.3d 6, 13-14 (D.C. Cir. 2011) (holding property owner suffers no injury in fact "unless and until" a jurisdictional determination applies to that particular property or an enforcement action against the property owner is commenced and thus has no standing). In another case involving the regulatory definition of "waters of the United States," the court recently recognized that an organization did not have standing to challenge a provision of the 2015 Rule on behalf of a member when, among other things, its member had not identified "any project, proposed or existing, that is causing or will soon cause the harms he is concerned about." *Puget Soundkeeper*, No. C15-1342-JCC, 2019 WL 6310562, at *7 n.8. Here, Plaintiff does not identify any particular waters that would be regulated under the CWA as a result of the NWPR. And, as in *Puget Soundkeeper*, Plaintiff does not point to any current or proposed activity that could result in the impairment of their unarticulated interest in the water. Plaintiff lacks standing.

## II.     Plaintiff Is Unlikely to Succeed on the Merits.

Plaintiff argues that the plurality's decision in *Rapanos* bars the NWPR's inclusion of certain intermittent tributaries and non-abutting wetlands in the definition of "waters of the United States." *See* Mot. at 28. This is incorrect. Neither *Rapanos* nor any other Supreme Court case considered the Agencies' present interpretation and supporting administrative record. But even if it had, the NWPR's definition of "waters of the United States" is not foreclosed. None of these cases provide a controlling analysis that "unambiguously forecloses the agency's interpretation" in the NWPR. *Brand X*, 545 U.S. at 983. And *Rapanos* did not facially "invalidate" prior

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

12

1    regulations. The Agencies' reasonable interpretation is entitled to deference so long as it keeps to

2    their statutory authority. Accordingly, Plaintiff cannot show it is likely to succeed on the merits.

3        **A.    *Chevron* Requires Deference to the Agencies' Reasonable Interpretation.**

4        Where, as here, a challenged rule contains an agency's interpretation of statutory

5    language, this Court reviews that interpretation under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467

6    U.S. 837 (1984)*.* At Step One, this Court determines "whether Congress has directly spoken to

7    the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the

8    court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

9    *Id.* at 842-43. "[I]f the statute is silent or ambiguous with respect to the specific issue," the Court

10   proceeds to Step Two to determine "whether the agency's answer is based on a permissible

11   construction of the statute." *Id.* at 843. The NWPR reflects a reasonable interpretation of the

12   phrase "waters of the United States" in CWA § 1362(7) under *Chevron* and *Brand X.*

13       **1.    The NWPR Does Not Exceed the Permissible Limits of the CWA.**

14       To determine whether a statute is ambiguous under Step One, courts employ "tools of

15   statutory construction" to ascertain if "Congress had an intention on the precise question"; for

16   that "must be given effect." *Chevron*, 467 U.S. at 843 n.9. Plaintiff does not contend "waters of

17   the United States" is unambiguous—for good reason. The Supreme Court has recognized

18   "ambiguity in the phrase 'navigable waters'" including waters of the United States. *E.g.*, *Rapanos*,

19   547 U.S. at 780 (Kennedy, J., concurring); *id.* at 752 (Scalia, J., plurality) (the Act "is in *some*

20   respects ambiguous"); *id.* at 796 (Stevens, J., dissenting) (noting "ambiguity inherent in the phrase

21   'waters of the United States'"); *see also Riverside Bayview*, 474 U.S. at 133; *SWANCC*, 531 U.S.

22   at 170-71.

23       Plaintiff implicitly contends that the fractured *Rapanos* decision is "a judicial precedent

24   holding that the statute unambiguously forecloses the agency's interpretation" embodied in the

25   NWPR. *Brand X*, 545 U.S. at 982-83. In other words, Plaintiff suggests that the NWPR is outside

26   of "any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843. It is not.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

*First*, in *Rapanos*, the four-Justice plurality did conclude "that the Corps' interpretation of the statute is impermissible." 547 U.S. at 737. The plurality opined that jurisdiction would seemingly only extend to "relatively permanent bod[ies] of water connected to traditional interstate navigable waters," including certain "seasonal" waters, and wetlands with a "continuous surface connection" to such relatively permanent waters. *Id.* at 732 & n.5, 742. But the plurality addressed only the Corps' interpretation of the 1986 Regulations; it was not presented with the NWPR and its reasonable limits to CWA jurisdiction. Instead, by acknowledging statutory ambiguity, the *Rapanos* plurality's analysis left room for a different rule. And that's what the NWPR is.

As the Agencies explained, the "plurality opinion in *Rapanos* elaborated further on the wetlands that it did not consider jurisdictional under the Act, specifically, wetlands with only an 'intermittent, physically remote hydrologic connection to 'waters of the United States,' as those 'do not implicate the boundary-drawing problem of *Riverside Bayview*.'" Response to Comments NWPR: Legal Arguments at 42 (*available at* https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11574) (quoting *Rapanos*, 547 at 742) (hereinafter "RTC"). Thus, "[t]he final rule is consistent with *SWANCC* and the *Rapanos* plurality and concurring opinions in that it would exclude isolated wetlands with only physically remote hydrologic connections to jurisdictional waters. . . . as well as with the Supreme Court's subsequent interpretation of *Riverside Bayview* and the scope of CWA jurisdiction over wetlands in *Rapanos*, in which both the plurality and concurring opinions agreed that 'waters of the United States' encompass wetlands closely connected to navigable waters." RTC at 43. Further, the Agencies reasonably concluded that scientific principles and their technical expertise allowed for the inclusion of certain intermittent waters and certain hydrologically connected, though not continuously abutting, wetlands, consistent with these principles. *See* 85 Fed. Reg. at 22,288 ("[T]he agencies relied on the available science to help inform where to draw the line of federal jurisdiction over tributaries, consistent with their statutory authorities."). Consistent with the guideposts of the

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

14

*Rapanos* plurality, these wetlands have more than a "physically remote hydrologic connection," and the Agencies devised a means to identify them without a significant "boundary-drawing problem." *See Rapanos*, 547 U.S. at 742.

*Second*, while Chief Justice Roberts joined the opinion of the plurality, he separately concurred to say that the Agencies should be "afforded generous leeway" for "developing *some* notion of an outer bound" of CWA jurisdiction. *Rapanos*, 547 U.S. at 758 (Roberts, C.J., concurring). The Agencies did so in the NWPR. And Justice Kennedy, too, did not consider his "significant nexus" standard to be unambiguously compelled by the CWA.[3] Justice Kennedy expressly offered his test "[a]bsent more specific regulations" by the Corps. *Id.* at 782.

*Third*, Plaintiff's attempt to invoke *Marks* is futile and ill-fitted for the question now presented to the Court. *See* Mot. at 17-28. *Marks* holds that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court *may be viewed* as that position taken by the members who concurred in the judgments on the narrowest grounds.'" 430 U.S. at 193 (emphasis added). But *Marks* cannot, as here, provide this Court a "binding" precedent that would unambiguously bar the Agencies' reasoned interpretation of the limits of the CWA or bar the deference courts show the Agencies under *Chevron* and *Brand X*.

Regardless, courts applying *Marks* to *Rapanos* have never adopted Plaintiff's argument that the *Rapanos* plurality opinion is the narrowest opinion. Some courts, including the Ninth Circuit, consider Justice Kennedy's opinion to be narrower than the plurality's because it is generally less restrictive of federal authority. *See United States v. Robertson*, 875 F.3d 1281, 1292 (9th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 139 S. Ct. 1543 (2019),

---

[3] And, of course, the four dissenting Justices expressed the "Corps' resulting decision to treat these wetlands as encompassed within the term 'waters of the United States' is a quintessential example of the Executive's reasonable interpretation of a statutory provision." 547 U.S. at 788.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

15

vacated as moot, 773 F. Appx. 391 (9th Cir. 2019)[4]; *N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999-1000 (9th Cir. 2007); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724-25 (7th Cir. 2006) (per curiam); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007).

Plaintiff urges this Court to disregard Ninth Circuit case law and find that the *Rapanos* plurality opinion is the "narrowest" opinion. Mot. at 17-28. Citing *United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016), Plaintiff contends that the Court can disregard the Ninth Circuit's decision in *City of Healdsburg*, 496 F.3d 993, which expressly held that Justice Kennedy's concurrence is the "narrowest" and therefore the controlling opinion of *Rapanos*. Mot. at 26-28. This exact argument has already been considered and rejected in *United States v. Robertson*, 875 F.3d at 1291. In finding that *Davis* does not conflict with *City of Healdsburg*, the Ninth Circuit in *Robertson* noted that a prior opinion could only be disregarded if the intervening higher authority's decision was "clearly irreconcilable" with the prior opinion. *Id.* at 1290. Plaintiff ignores *Robertson* in its Motion and offers no explanation as to why that opinion or its reasoning should not be followed. There is no reason to deviate from this persuasive authority.

The First and Third Circuits have held that *Marks* could not be strictly applied to *Rapanos* because neither the plurality's nor Justice Kennedy's opinion is narrower than the other. *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011); *United States v. Johnson*, 467 F.3d 56, 62-64 (1st Cir. 2006). Likewise, the Eighth Circuit concluded that, because the plurality and Justice Kennedy adopted different narrower tests, either test can support CWA jurisdiction. *United States v. Bailey*, 571 F.3d 791, 798-99 (8th Cir. 2009). Indeed, no court has held that the *Rapanos*

---

[4] Robertson died while his petition for certiorari was pending in the Supreme Court. For that reason, without considering the merits, the Supreme Court granted the petition and remanded with instructions to vacate the opinion below. *See* 139 S. Ct. 1543 (2019); 773 F. Appx at 391 (so vacating).

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1   plurality standard alone controls. *E.g.*, *United States v. Cundiff*, 555 F.3d 200, 210 n.2 (6th Cir.

2   2009); *Bailey*, 571 F.3d at 1005-06. Plaintiff's argument should be denied on these grounds.

3         *Fourth*, Plaintiff contends that the Court should treat the *Rapanos* plurality as the

4   controlling opinion because doing so would avoid any constitutional concerns that the Kennedy

5   concurrence would implicate. *See* Mot. at 14-17 (claiming Justice Kennedy's concurrence

6   implicates Tenth Amendment, Due Process, Non-Delegation, and Commerce Clause concerns).

7   Plaintiff further claims the NWPR's inclusion of intermittent tributary and non-abutting wetlands

8   as jurisdictional waters under the CWA "raise these constitutional concerns to their height." Mot.

9   at 15. Neither of these arguments has any merit.

10         As an initial matter, the NWPR does not raise constitutional concerns. Plaintiff argues that

11   because the regulation of farming in intermittent tributaries and non-abutting wetlands is a

12   "quintessentially local land use" matter, federal jurisdiction over those types of waters violates

13   the Tenth Amendment's reservation of powers to the states. Mot. at 14-15. This is an incorrect

14   understanding of Tenth Amendment jurisprudence. Here, the regulation of intermittent tributaries

15   and non-abutting adjacent wetlands under the CWA is a permissible exercise of Federal

16   jurisdiction pursuant to the Commerce Clause. "[I]f Congress acts under one of its enumerated

17   powers, there can be no violation of the Tenth Amendment." *United States v. Jones*, 231 F.3d

18   508, 515 (9th Cir. 2000); *see also Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 863 F.2d 1420, 1436

19   (9th Cir. 1988) ("[t]he Clean Water Act was enacted by Congress in the exercise of its

20   constitutional power to regulate commerce"). Moreover, the Supreme Court "long ago rejected

21   the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply

22   because it exercises its authority under the Commerce Clause in a manner that displaces the

23   States' exercise of their police powers." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452

24   U.S. 264, 291 (1981). Jurisdiction over intermittent tributaries and non-abutting adjacent wetlands

25   under the CWA is permissible and well within the limits of Congress' power under the Commerce

26   Clause. *See SWANCC*, 531 U.S. at 172 (holding that interpreting the CWA to extend to

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1    nonnavigable, isolated, intrastate ponds that lack a sufficient connection to traditional navigable

2    waters would invoke the outer limits of Congress' power under the Commerce Clause); *see also*

3    85 Fed. Reg. at 22,265, 73 (noting that the NWPR was promulgated to avoid the outer limits of

4    the Agencies' authority under the Commerce Clause). In any event, the Agencies in the NWPR

5    considered the policy direction from Congress in the CWA to "recognize, preserve, and protect

6    the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution," 33

7    U.S.C. § 1251(b), as a fundamental guidepost in interpreting the scope of the statute and furthered

8    the important goal of environmental protection in balance with Congress's explicit policy to

9    recognize, preserve, and protect states' primary responsibilities to manage their land and water

10   resources. Simply because the NWPR asserts federal jurisdiction over waters that may also be

11   regulated by local land use laws, it is not by itself a violation of the Tenth Amendment.

12           Next, citing the doctrine of constitutional avoidance, Plaintiff contends that the *Rapanos*

13   plurality must be accepted as the controlling opinion because Justice Kennedy's concurrence

14   implicates constitutional concerns. Mot. at 14-17. But as explained above, no court that has

15   considered which *Rapanos* opinion is controlling has ever held that the plurality opinion alone

16   controls.

17           But more fundamentally, it is irrelevant which opinion "controls." Whether the plurality's

18   standard or Justice Kennedy's standard is the "controlling" opinion of *Rapanos*, or if *Marks*

19   cannot be applied to *Rapanos* at all, the result here would be the same. Neither the plurality nor

20   Justice Kennedy forecloses the Agencies' reasonable interpretation of the extent of CWA

21   jurisdiction which draws from common elements of each and does not stray beyond their statutory

22   authority. Pursuant to *Brand X*, the Agencies were not specifically "bound" by—though they

23   appropriately considered—the specific tests described in the opinions of *Rapanos*. The Agencies

24   were free to develop a different definition of "waters of the United States." And, the Agencies

25   applied principles from both the plurality's and Justice Kennedy's opinions. *See supra*

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

18

Background Part I.B.3; 85 Fed. Reg. at 22,268, 71.[5] Because the NWPR's inclusion of intermittent tributaries and non-abutting adjacent wetlands as jurisdictional waters under the CWA does not run afoul of any constitutional principles, Plaintiff's argument is without merit.

*Fifth*, contrary to Plaintiff's claim, Mot. at 12-14, the Supreme Court has not weighed in on the limits of the CWA since *Rapanos*. As Plaintiff acknowledges, *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020), focused on point source discharges of pollutants, not the meaning of the phrase "waters of the United States." It merely referenced the *Rapanos* plurality's discussion on point source discharges. *Id.* at 1475. This in no way demonstrates that the *Rapanos* plurality opinion is controlling.[6] The Supreme Court cases cited by Plaintiff, Mot. at 13-14, do not reference the *Rapanos* plurality's interpretation of "waters of the United States." *See, e.g.*, *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 625, 633 (referencing *Rapanos* plurality opinion in describing CWA permitting schemes); *Hawkes*, 136 S. Ct. at 1811-12, 1815 (citing *Rapanos* for plurality's characterizations of the expanse of acreage to which the Corps has applied its regulatory definition, costs of obtaining a permit, and description of permitting process).

Moreover, although a majority of the *Rapanos* Court remanded the case for further consideration, Plaintiff mischaracterizes the nature of the remand. Both the plurality and Justice Kennedy agreed that "the Act . . . regulate[s] 'at least some waters that are not navigable in the

---

[5] In fact, the NWPR even answers, in part, the primary criticism the *Rapanos* dissent had for the plurality opinion. This was that the "plurality [went] on, however, to define 'adjacent to' as meaning 'with a continuous surface connection to' other water," though "a dictionary" only requires that objects "lie close to each other, but *not necessarily in actual contact.*" *Rapanos*, 547 U.S. at 805. The NWPR extends jurisdiction to certain wetlands with a close hydrologic connection to, but that do not continuously abut, navigable waters and their tributaries, yet does not present an insurmountable "boundary drawing problem." 85 Fed. Reg. at 22,308/3.

[6] *Maui* held that point source discharges that reach navigable waters indirectly through the "functional equivalent of a direct discharge" are subject to CWA regulation. 140 S. Ct. at 1476. Thus, even if such waters were not themselves directly subject to CWA jurisdiction, *Maui* shows that point source discharges to such waters may be subject to CWA regulation if they convey pollutants to navigable waters.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

19

1   traditional sense.'" Mot. at 21 (quoting *Rapanos*, 547 U.S. at 767 (Kennedy, J., concurring)).

2   Plaintiff also fails to acknowledge that, before *Rapanos*, the Supreme Court had repeatedly

3   reaffirmed that the CWA reaches some waters that are not navigable in the traditional sense. *See*

4   *Riverside Bayview*, 474 U.S. at 134-35; *SWANCC*, 531 U.S. at 171. Thus, Plaintiff's argument

5   that, if *Marks* cannot be applied to *Rapanos*, jurisdiction must be restricted to navigable-in-fact

6   waters and directly abutting wetlands (*see* Mot. at 29) lacks any legal support.

7          So neither *Rapanos* nor any other Supreme Court case precludes the Agencies' new

8   interpretation. To the contrary, *Rapanos* invites it. In the absence of a *Chevron* Step One statutory

9   interpretation by a court, "a court's choice of one reasonable reading of an ambiguous statute does

10  not preclude an implementing agency from later adopting a different reasonable interpretation."

11  *United States v. Eurodif S.A.*, 555 U.S. 305, 315 (2009). This "established a 'presumption that

12  Congress, when it left ambiguity in a statute meant for implementation by an agency, understood

13  that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency

14  (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" *Brand*

15  *X*, 545 U.S. at 982 (citation omitted). Accordingly, under *Brand X*, the Agencies are expressly

16  empowered to reconsider a patently ambiguous statutory provision in the CWA, and the four-

17  Justice plurality from *Rapanos* does not preclude it. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S.

18  208, 218 (2009). *See also* 547 U.S. at 758 (Roberts, C.J., concurring).

19          **2.      The Agencies' Revised Regulatory Definition of "Waters of the United**
20          **States" Is a Permissible Construction of Ambiguous Statutory Terms.**

21          The question at *Chevron* Step Two is "whether the agency's answer [to the interpretive

22  question] is based on a permissible construction of the statute." *Mayo Found. for Med. Educ. &*

23  *Research v. United States*, 562 U.S. 44, 54 (2011) (quoting *Chevron*, 467 U.S. at 843). The

24  Agencies' interpretation need not be "the only possible interpretation, nor even the interpretation

25  deemed *most* reasonable by the courts." *Entergy Corp.*, 556 U.S. at 218.

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1    Interpreting ambiguous language "involves difficult policy choices," so judicial deference

2    is critical as "agencies are better equipped to make [such choices] than courts." *Brand X*, 545 U.S.

3    at 980; *see also Riverside Bayview*, 474 U.S. at 132 ("In determining the limits of its power to

4    regulate discharges under the Act, the Corps must necessarily choose some point at which water

5    ends and land begins. Our common experience tells us that this is often no easy task . . . [and] far

6    from obvious."). Indeed, a "court's prior judicial construction of a statute trumps an agency

7    construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its

8    construction follows from the unambiguous terms of the statute and thus leaves no room for

9    agency discretion." *Brand X*, 545 U.S. at 982; *see also Eurodif*, 555 U.S. at 315 (holding agencies

10   can adopt a different interpretation of an ambiguous statute than a prior court decision).

11   The NWPR is a reasonable interpretation of the CWA phrase "waters of the United

12   States." It reflects a harmonized vision of both the plurality and concurring opinions in *Rapanos*.

13   While Plaintiff insists that the Court must pick between Justice Kennedy's opinion and the

14   plurality's opinion, Mot. at 12, the Agencies reasonably sought to craft a rule that embraced their

15   commonalities.

16   The NWPR is, first and foremost, based on the text of the statute, though informed by

17   *Rapanos*, *SWANCC*, and *Riverside Bayview*. Those decisions articulated principles that served as

18   guideposts for the Agencies. *See* 85 Fed. Reg. at 22,255-57, 22,267-68. The Agencies particularly

19   analyzed common themes in the fractured *Rapanos* decision as well as the earlier *SWANCC*

20   decision. *Id*. at 22,268. Ultimately, the Agencies concluded that "there are sufficient

21   commonalities between these opinions to help instruct the agencies on where to draw the line

22   between Federal and State waters." *Id.* Mindful of these commonalities, the NWPR avoids

23   regulating non-navigable, isolated waters that lack a sufficient connection to traditional navigable

24   waters. At bottom, its "unifying legal theory"—consistent with statutory text and Supreme Court

25   guidance—asserts "federal jurisdiction over those waters and wetlands that maintain a *sufficient*

26   surface water connection to traditional navigable waters." *Id.* at 22,271.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

21

1    Here, the Agencies are entitled to wide deference. Interpreting "waters of the United

2    States" notoriously involves the "difficult policy choices" contemplated by *Brand X*. *See also*

3    *Riverside Bayview*, 474 U.S. at 132 ("In determining the limits of its power to regulate discharges

4    under the Act, the Corps must necessarily choose some point at which water ends and land begins.

5    Our common experience tells us that this is often no easy task . . . [and] far from obvious."). In

6    fact, Chief Justice Roberts specifically noted that the Agencies are "afforded generous leeway"

7    for "developing *some* notion of an outer bound" in interpreting the CWA's jurisdiction. Rapanos,

8    547 U.S. at 758 (Roberts, C.J., concurring). The NWPR is a reasonable interpretation of the

9    ambiguous phrase "waters of the United States" because it is consistent with the text, structure,

10   objective, and policies of the Act. The Agencies' technically supported and well-explained

11   interpretation of "navigable waters," including "waters of the United States," is within the

12   congressional gap of deference. Plaintiff has no likelihood of successfully showing otherwise.

13   **B.      The NWPR Reasonably Defines "Tributary" To Include Intermittent Flow**
14   **         and "Adjacent Wetlands" to Include Certain Non-Abutting Wetlands.**

15        Contrary to Plaintiff's allegation, the NWPR's intermittent tributary and non-abutting

16   adjacent wetland provisions are reasonable and lawful. The Agencies thoroughly explained their

17   rationale for adopting these provisions. *See Chevron*, 467 U.S. at 843-44 (holding agency's

18   interpretation of an ambiguous statute is to be adopted if it is a reasonable interpretation of the

19   statute); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

20   43 (1983) (holding that an agency decision is lawful if it provides "a satisfactory explanation for

21   its action including a rational connection between the facts found and the choice made").

22        Plaintiff argues that *Rapanos* forecloses the inclusion of intermittent tributaries and non-

23   abutting wetlands in the definition of "waters of the United States." Mot. at 28. This is incorrect.

24   As one court explained when recently declining to preliminarily enjoin the NWPR:

25        [E]ven if the concurrence and the dissent can be read together to stand for the
         proposition that the *Rapanos* plurality's articulation of the maximum permissible
26        reach of the statute is an improper construction, a holding that the Agencies must

Opposition to Plaintiff's Second                      U.S. Dept. of Justice/ENRD
Motion for Preliminary Injunction                            P.O. Box 7611
2:19-CV-0569-JCC                                        Washington, D.C. 20044
                                    22                      (202) 514-1806

construe the statute more broadly is a bridge too far. Finally, nothing in either the *Rapanos* concurrence or the dissent—or in the two read together—can be characterized as a holding "that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."

*California*, 2020 WL 3403072, at *6 (citing *Brand X*, 545 U.S. at 982).

Moreover, by specifically defining "tributary" to include "intermittent" and "perennial" flow, and *not* "ephemeral" flow, the NWPR provides more technical clarity compared to the 1986 Regulations regarding the precise contours of what constitutes a "water of the United States." 85 Fed. Reg. at 22,274. While the differences between "perennial," "intermittent," and "ephemeral" flows are understood within the scientific community, these terms are often used differently or interchangeably in legal settings. This can lead to confusing guidance and decisions from courts. *See id.* (noting the *Rapanos* plurality seemed to confuse the concepts of "intermittent" and "ephemeral," despite their distinct meaning within the scientific community). The *Rapanos* plurality both expressed skepticism about whether certain "intermittent" waters are jurisdictional, 547 U.S. at 742, though elsewhere said "[w]e do not necessarily exclude *seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months." *Id.* at 732 n.5. For greater clarity, the Agencies specifically defined "intermittent," "perennial," and "ephemeral" so that "tributaries," which include "intermittent" flow, are "waters of the United States." This rationale is consistent with the *Rapanos* plurality. 85 Fed. Reg. at 22,340 (defining "intermittent" as "surface water flowing continuously during certain times of the year and more than in direct response to precipitation").

The Agencies also thoroughly explained why the definition of "adjacent wetlands" includes more than just wetlands that directly "abut" a water identified in paragraphs (a)(1), (2), or (3) of the NWPR. 33 C.F.R. § 328.3(c)(1) (2020). In doing so, the Agencies considered core legal principles set forth in *Riverside Bayview*, *SWANCC*, and *Rapanos* along with scientific considerations relevant to the CWA. Isolated wetlands with only physically remote or irregular hydrologic connections to jurisdictional waters and isolated wetlands with only ecological

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

23

1    connections are not "waters of the United States." 85 Fed. Reg. at 22,309 (citing *SWANCC*, 531

2    U.S. at 171-72; *Rapanos*, 547 U.S. at 742 (plurality); *id.* at 766-67 (Kennedy, J., concurring)).

3    But wetlands with regular hydrologic surface connections to jurisdictional waters are "waters of

4    the United States." *See Rapanos*, 547 U.S. at 742 (plurality); *Riverside Bayview*, 474 U.S. at 134.

5    And, some wetlands that do not directly abut a jurisdictional water are still capable of establishing

6    a regular surface water connection to a jurisdictional water. *See* 85 Fed. Reg. at 22,309-15 (noting

7    that wetlands not directly abutting a jurisdictional water may nonetheless maintain a regular

8    hydrological connection to a jurisdictional water under multiple circumstances such as flooding

9    from a jurisdictional water in a typical year). Thus, it was entirely justified and within the

10   Agencies' discretion to establish these categorical instances where wetlands not directly abutting

11   jurisdictional waters are still "adjacent wetlands" under the NWPR. *See Riverside Bayview*, 474

12   U.S. at 132-34 (holding courts will defer to the agencies' determination of adjacent wetlands

13   subject to CWA jurisdiction, given the technical nature of this determination).

14          **C.      Issue Preclusion Does Not Bar the NWPR.**

15          Plaintiff's argument that the NWPR is barred by issue preclusion is baseless. Issue

16   preclusion (or "non-mutual collateral estoppel") does not apply to claims against the United

17   States. *United States v. Mendoza*, 464 U.S. 154, 157-64 (1984). *Mendoza* held that, although the

18   government is bound by the principles of res judicata, "it is not further bound in a case involving

19   a litigant who was not a party to the earlier litigation." *Id.* at 162. Contrary to Plaintiff's

20   arguments, Mot. at 10-12, *Mendoza* applies here and bars Plaintiff's issue preclusion argument.

21   *E.g.*, 464 U.S. at 161-162 (noting that successive Administrations may "take differing positions

22   with respect to the resolution of a particular issue"); *id.* at 164 (distinguishing cases where

23   "mutuality is present"). Because Plaintiff was not a party to *Rapanos*, issue preclusion is

24   inapplicable here.

25          The United States of course follows binding Supreme Court precedent. But there is no

26   binding precedent that precludes the regulatory approach the Agencies took in the NWPR. And

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

24

1 | *Rapanos* did not invalidate the prior regulatory provisions. Even if it had, the NWPR is different
2 | than the prior regulations, and is entirely consistent with *Rapanos*.

3 |     First, Plaintiff's assertion that *Rapanos* "invalidated" the tributary and adjacent wetlands
4 | subsections of the 1986 Regulations, Mot. at 32, is incorrect. While both the plurality and Justice
5 | Kennedy concluded that the Corps' assertion of jurisdiction lacked necessary limitations and
6 | generally declined to defer to the Corps' interpretation of its regulations in that case, *Rapanos*
7 | was not a "facial" challenge to the Agencies' regulations. So neither opinion formally
8 | "invalidated" the regulations. *See* 547 U.S. at 725-26 (plurality); *id.* at 778 (Kennedy, J.,
9 | concurring).[7] Rather, *Rapanos* was an "as-applied" challenge to particular jurisdictional
10 | decisions. *Id.* at 757 (remanding the case without disrupting regulations); *id.* at 759, 787
11 | (Kennedy, J., concurring). Though informed by the opinions in *Rapanos*, the regulations remained
12 | in effect until and after the 2015 Rule. The NWPR replaced those regulations. So the facial
13 | legality of the NWPR is a separate issue and not controlled by the as-applied decision in *Rapanos*.

14 |     Second, the NWPR provides a different regulatory definition of "waters of the United
15 | States" than the regulations in effect at the time of *Rapanos*. As is readily apparent by comparing
16 | the regulatory text, the NWPR's definition of "waters of the United States" is generally narrower
17 | than the definition in the prior regulations. *Compare* 33 C.F.R. § 328.3(a)(5) (2019) (broadly
18 | including "tributaries" of any waters "the use, degradation or destruction of which could affect
19 | interstate or foreign commerce"), *with* 33 C.F.R. § 328.3(a)(2), (c)(12) (2020), 85 Fed. Reg. at
20 | 22,338-39 (defining a "tributary" as "a river, stream, or similar naturally occurring surface water
21 | channel that contributes surface water flow to a [traditional navigable water] in a typical year"

---

[7] Nor did *Rapanos* determine the regulations "violat[ed] the Commerce Clause and the Tenth Amendment." *See* Mot. at 30. Plaintiff offers only a meritless theory of constitutional injury and advances a flawed reading of *Rapanos*, coming to the erroneous conclusion that the NWPR's regulations are the same as the regulations in effect at the time of *Rapanos*. *Id.* at 14-17, 30-31. Essentially, Plaintiff offers nothing to support its claim that the NWPR exceeds "Congress' power to legislate under the Tenth Amendment and the Commerce Clause." *Id.*

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

25

and must be "perennial or intermittent"); *compare* 33 C.F.R. § 328.3(a)(2), (c) (2019) (including interstate wetlands and wetlands "adjacent to" any paragraph (a)(1) through (a)(6) water (other than waters that are themselves wetlands)) *with* 33 C.F.R. § 328.3(a)(4), (c)(1) (2020) (including only adjacent wetlands to traditional navigable waters, tributaries, or lakes and ponds and impoundments of jurisdictional waters and defining "adjacent wetlands" more narrowly than the term "adjacent" at 33 C.F.R. § 328.3(c) (2019)). While Plaintiff's reliance on the *Rapanos* plurality opinion is misplaced for the reasons stated *supra*, the plurality's consideration of "intermittent" waters was not informed by the NWPR's analysis. Nor did the plurality use the term "intermittent" as it is defined in the NWPR. *See* 85 Fed. Reg. at 22,274/1. Thus, *Rapanos* does not preclude the approach taken in the NWPR.

## III.   Plaintiff Fails to Demonstrate Imminent, Irreparable Harm from the NWPR.

Plaintiff alleges its members will be irreparably injured because "intermittent tributaries and non-abutting 'adjacent' waters are frequently found on members' properties," requiring them "to seek permits for projects that are not legally regulated under the Clean Water Act." Mot. at 31. For the reasons explained *supra*, the NWPR is an appropriate exercise of the Agencies' legal authority under the CWA. But even if there were legitimate questions about whether and how the Agencies assert jurisdiction over intermittent tributaries and adjacent wetlands under the NWPR, Plaintiff fails to demonstrate the sort of imminent and irreparable injury necessary for preliminary injunctive relief.

### A.   Plaintiff's Allegations of Irreparable Harm Are Premature.

There is no evidence that any of Plaintiff's members intend to conduct a project requiring a CWA permit anytime soon. Even if the Agencies were "not attack[ing] Plaintiff's case on ripeness grounds, the question of irreparable harm in this context is inextricably intertwined with the issue of ripeness." *New York State Bar Ass'n v. Reno*, 999 F. Supp. 710, 714 (N.D.N.Y. 1998). A claim is not ripe for adjudication if the issues to be adjudicated are contingent upon future events that may never occur. *Texas v. United States*, 523 U.S. 296, 300 (1998).

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

26

1    As explained *supra*, Argument Part II.A, Plaintiff has failed to proffer any evidence

2    suggesting Plaintiff's members actually intend to engage in activities requiring CWA permitting

3    as a result of the NWPR. Plaintiff instead cites declarations claiming harms arising out of the

4    2015 Rule. *See* Mot. at 8-9 (citing Ledgerwood Decl. ¶¶ 2-4 (Dkt. No. 16); Stokes Decl. ¶¶ 3, 4,

5    10 (Dkt. No. 17); Supp. Ledgerwood Decl. ¶¶ 2-9 (Dkt. No. 36); Supp. Stokes Decl. ¶ 2-14 (Dkt.

6    No. 37)). These declarations fail to establish irreparable harm with respect to the NWPR. None

7    of the declarants attest that they intend to conduct activities on intermittent tributaries and non-

8    abutting adjacent wetlands requiring CWA permitting *as a result of the NWPR. Id.* None of the

9    declarants profess any plan to seek CWA permits for work done on "intermittent tributaries" and

10   "non-abutting adjacent wetlands" that would be jurisdictional under the NWPR. *Id.* None of the

11   declarants claim that they will have to delay work as a result of permitting requirements under

12   the CWA for activities in waters that would be jurisdictional under the NWPR. *Id.* In other words,

13   the alleged harms arising from the NWPR are pure speculation and unsupported by Plaintiff's

14   evidence. On this basis alone, Plaintiff cannot demonstrate irreparable harm. *See also Nw. Envtl.*

15   *Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290, 1314 (D. Or. 2011) ("Speculative

16   harm resulting from undefined future plans does not amount to irreparable harm.").

17   Not only is there no evidence that Plaintiff's members intend to conduct projects requiring

18   a CWA permit anytime soon, Plaintiff's assertion that the Agencies will seek to regulate these

19   activities is speculative as well. Plaintiff's member's description of their land is so vague, it is

20   entirely possible that none of the activities Plaintiff's members profess to undertake even occur

21   in waters subject to CWA jurisdiction under the NWPR. For example, Mr. Stokes claims that his

22   property contains "a stream" from which he irrigates his property, "ponds which collect

23   rainwater," and "a few ephemeral streams." *Id.* ¶ 4. He attests that he uses an excavator near a

24   diversion and at his retention pond to prevent silt from blocking the flow of water from the

25   irrigation stream. Supp. Stokes Decl. ¶¶ 3-7 (Dkt. No. 37). He also explains that he conducts

26   maintenance operations in and near other smaller streams on his property. *Id.* at ¶¶ 8-13; *see also*

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

27

1   Stokes Decl. ¶ 5 (Dkt. No. 17) (attesting that he engages in range-land conservation projects,

2   which includes improving irrigation efficiencies, installing fencing, and pumping water to the

3   uplands). Based on Mr. Stokes' description, it is entirely possible that none of these projects

4   require CWA permitting. Under the NWPR, "[p]onds which collect rainwater" and "ephemeral

5   streams" may not be "waters of the United States" subject to CWA permitting. *See* 85 Fed. Reg.

6   at 22,338 (noting that "ephemeral features," water storage reservoirs, and excavations to store

7   runoff are not "waters of the United States"). Similarly, Mr. Ledgerwood generally describes the

8   water ways on his property as "sometimes dry streams." Ledgerwood Decl. ¶ 3[8] (Dkt. No. 16).

9   Based on the current record, this Court cannot make any determination about whether the waters

10  described therein are actually jurisdictional under the NWPR. On this basis alone, Plaintiff has

11  failed to show imminent, irreparable harm.[9]

12          Furthermore, while it may be unclear from the limited information Plaintiff has provided

13  whether its members' activities would be covered by a statutory exemption from the requirements

14  in CWA section 404, it is at least possible that some of their activities would qualify for a

15  permitting exemption. *See generally* 33 U.S.C. § 1344(f) (exemptions). For instance, Plaintiff

16  fails to address whether the activities in question—even if involving a "water of the United States"

17  under the NWPR—would qualify for a CWA permitting exemption for certain ranching or

18

19  ───────────────

20  [8] While Mr. Ledgerwood claims to own land containing "intermittent" streams, *see* Ledgerwood
    Decl. ¶ 3 (Dkt. no. 16), this declaration was submitted in response to a challenge to the 2015

21  Rule, not the NWPR. In fact, "intermittent" was not specifically defined in the 2015 Rule. In
    other words, Mr. Ledgerwood may not be using the term "intermittent" as it was defined in the

22  NWPR.

23  [9] To be clear, if this suit progresses, Plaintiff's members may be able to show that the NWPR
    covers waters on their property by submitting revised, more detailed declarations or obtaining an

24  approved jurisdictional determination. This Court, however, need not delve into whether and
    how Plaintiff might show that the NWPR affects their members in future filings. As of now,

25  Plaintiff has not met its current burden of showing irreparable harm justifying preliminary
    injunctive relief.

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1    farming activities. *Id*. § 1344(f)(1)(A). Indeed, both Mr. Ledgerwood and Mr. Stokes describe

2    conducting projects that may fall under one of the CWA discharge exemptions. *See*, *e.g.*, Supp.

3    Ledgerwood Decl. ¶¶ 2-9 (Dkt. No. 36) (describing building pump sites on a creek for "multiple

4    irrigation diversions," building silt trap ponds near a creek, and conducting stream bed

5    improvements in a creek on his property); Supp. Stokes Decl. ¶¶ 3-14 (Dkt. No. 37) (describing

6    maintenance of irrigation diversions and farm roads); 33 U.S.C. § 1344(f)(1). As a result, this

7    Court cannot conclude that Plaintiff's members are harmed by the NWPR, let alone that its

8    members are likely to suffer irreparable harm.

9        Accordingly, Plaintiff's request for a preliminary injunction is premature and should

10   therefore be rejected.

11       **B.      Plaintiff Fails to Show Imminent, Irreparable Harm from the NWPR.**

12       Plaintiff's alleged irreparable injury stems from the Agencies' assertion of jurisdiction

13   over intermittent tributaries and non-abutting adjacent wetlands. The Agencies—in the Repeal

14   Rule—recodified the 1986 Regulations in part to ensure that a consistent definition of "waters of

15   the United States" was applied throughout the country. Importantly, the NWPR, which replaces

16   the Repeal Rule, generally *reduces* the scope of waters subject to CWA permitting compared to

17   the 1986 Regulations and Repeal Rule, as implemented.

18           Regarding the permitting programs under sections 402 and 404 of the CWA, the
             final rule will reduce the scope of waters subject to CWA permitting compared
19           with the baseline of the 2019 Rule as implemented. For instance, the 2019 Rule,
             as implemented, would regulate certain ephemeral streams found to have a
20           significant nexus with traditional navigable waters according to the 2008 *Rapanos*
             Guidance, whereas the revised definition in this final rule categorically excludes
21           ephemeral features. Because fewer waters and wetlands are federally regulated
             under this rule relative to the 2019 Rule as implemented, the agencies anticipate
22           that the regulated public would need to prepare fewer CWA permit applications.
23

24   85 Fed. Reg. at 22,333. Here, Plaintiff has offered no evidence that its members are subject to

25   CWA permitting due to the NWPR.

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

29

1      Although asserting that the harms "are ongoing," Mot. at 33, Plaintiff provides no

2 declaration or other evidence supporting that claim. If such harms are ongoing, they cannot result

3 from, or be remedied by, an injunction of the NWPR. According to Plaintiff, if the NWPR takes

4 effect, Plaintiff's "members will be unable to legally engage in any earth moving operations on

5 their own property wherever they encounter intermittent drainages and other temporary water

6 features for at least two years." *Id*. Not only is this an incorrect application of the NWPR, *see* 33

7 C.F.R. § 328.3(b)(3) (2020) (ephemeral features are not "waters of the United States" subject to

8 CWA jurisdiction), Plaintiff has offered no evidence suggesting that its members will encounter

9 this harm because of the NWPR. This allegation is nothing more than speculation and cannot

10 support an order for injunctive relief pending orderly proceedings on the merits at summary

11 judgment.

12      Furthermore, there is no showing that this impact is caused by the NWPR, as opposed to

13 the CWA generally. Mr. Stokes' Declaration on this point is telling. He declares that his family

14 has owned his farm since 1945 and has been a member of the Plaintiff organization since 1982.

15 Stokes Decl. ¶¶ 2-3 (Dkt. No. 17). He expresses an understanding that some projects conducted

16 in certain waters require CWA permitting. *Id.* ¶¶ 6-7. In other words, this work was conducted

17 under a broader assertion of regulatory jurisdiction than he now complains of. He fails to explain

18 why he can no longer conduct these activities even though the Agencies are contracting, rather

19 than expanding, the potential jurisdiction over waters compared to the 1986 Regulations.

20      Additionally, even if this Court finds that Plaintiff's members will cease the projects

21 referenced in its declarations, these allegations fail to show *imminent* harm. Plaintiff also suggests

22 that imminent and irreparable harm can be shown if its members may be required to conduct

23 future unpermitted projects "on an unpredictable basis" in response to a sudden unknown future

24 contingency, such as a change in weather. Mot. at 33-34. This is the kind of speculative harm,

25 dependent on unknown future contingencies, courts routinely reject as insufficient in establishing

26 "imminent" harm. *See*, *e.g.*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

30

Cir. 1988) (upholding a finding of no imminent and irreparable harm where multiple contingencies would have to occur before harm would occur); *Sassman v. Brown*, 73 F. Supp. 3d 1241, 1251 (E.D. Cal. 2014) (finding no irreparable harm when plaintiff's theory of harm would only manifest if a series of future contingent events took place). There is no evidence that the projects that Plaintiff's members attest to conducting will be done in the immediate future.

Lastly, the "purpose of a preliminary injunction[] is to preserve the status quo and the rights of the parties until a final judgment issues." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Here, the Agencies' assertion of CWA jurisdiction over intermittent tributaries and non-abutting adjacent wetlands *is* the status quo *ante*. Even under the "significant nexus" test from the 2006 *Rapanos* decision, the Corps commonly asserted CWA jurisdiction over intermittent tributaries and non-abutting adjacent wetlands. Granting a preliminary injunction against the NWPR—and, specifically, to excise only certain lines from the regulation in the manner Plaintiff suggests—would actually change the status quo *ante* application of the CWA's jurisdiction to the Plaintiff pending a decision on the merits.

## C. Plaintiff's Alleged Injuries Are Not Irreparable.

Plaintiff alleges that its members will be irreparably harmed if "required to seek permits for projects that are not legally regulated under the Clean Water Act." Mot. at 31. Since their claims of injury are not imminent, preliminary relief should be denied on that ground alone. Even setting that point aside, Plaintiff's alleged injuries are not irreparable.

Plaintiff inappropriately attempts to recast its members' injury as a *constitutional* injury to avoid any meaningful scrutiny of whether their alleged injury is, in fact, irreparable. Although courts generally hold that violations of individual rights protected by the Constitution, such as the freedom of speech, are irreparable, *see*, *e.g.*, *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998), Plaintiff alleges no such violation here. Instead, Plaintiff alleges that the NWPR's provisions on intermittent tributaries and non-abutting adjacent wetlands "violate the Tenth Amendment and the Commerce Clause." Mot. at 30. But such violations are not treated the same

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

31

as violations to individual constitutional rights. *E.g.*, *All. of Auto. Mfrs. v. Hull,* 137 F. Supp. 2d 1165, 1173 (D. Ariz. 2001) (finding that violations of the Commerce Clause are not the same as violations of individual constitutional rights and are not irreparable harms). Indeed, Plaintiff's use of ellipses when quoting Federal Practice and Procedure obscures this distinction. *See* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013) ("When an alleged deprivation of a constitutional right is involved, ***such as the right to free speech or freedom of religion***, most courts hold that no further showing of irreparable injury is necessary") (emphasis indicates portion omitted by Plaintiff).

Plaintiff cites two district court cases to allege that structural constitutional violations generally constitute irreparable harm. Mot. at 30 (citing *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 893 F. Supp. 301, 309 (D.N.J. 1995), and *Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989)). But other district courts have taken the opposite view, holding that "Plaintiffs are not entitled to a presumption of irreparable harm [where] the constitutional rights at stake . . . are not 'personal' in nature." *Prof'l Towing & Recovery Operators of Ill. v. Box*, No. 08 C 4096, 2008 WL 5211192, at *13 (N.D. Ill. Dec. 11, 2008); *Hull*, 137 F. Supp. 2d at 1173; *Am. Petroleum Inst. v. Jorling*, 710 F. Supp. 421, 431–32 (N.D.N.Y. 1989). Requiring Plaintiff's members to obtain permits before discharging into certain waters may constitute harm, but such allegations are not the sort of violation of a constitutional right that weighs heavily in an irreparable harm analysis.

For the foregoing reasons, Plaintiff lacks irreparable harm warranting injunctive relief.

**IV. The Balance of Equities Weighs in Favor of the Agencies, and Issuance of the Injunction Requested by Plaintiff Would Harm the Public Interest.**

The "balance of harms" and "public interest" prongs favor the Agencies. These prongs, which merge when the government is the opposing party, are not just restatements of other elements of the preliminary injunction test. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff carries the burden of showing that the harm to it outweighs any harm to the public interest.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

32

1   *Feldman v. Ariz. Sec'y of State's Office*, 842 F.3d 613, 627 (9th Cir. 2016). If the impact of an

2   injunction reaches beyond the parties, carrying potential for public consequences—as the

3   injunction sought here unquestionably does—"the public interest will be relevant to whether the

4   district court grants the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139

5   (9th Cir. 2009).

6          Here, the balance of equities and public interest weigh against an injunction. Plaintiff is

7   seeking an injunction to partially enjoin portions of the NWPR, which would effectively amount

8   to a nationwide injunction. Nationwide injunctions are generally impermissible—but especially

9   so on this speculative record. The Agencies pursued a years-long effort to formulate a uniform

10  national policy that can achieve consistency and clarity for the regulated public. *See*, *e.g.*, 85 Fed.

11  Reg. at 22,252 (explaining the NWPR "provides clarity and predictability for Federal agencies,

12  States, Tribes, the regulated community, and the public"). According to an Economic Analysis

13  conducted by the Agencies, the quantified cost savings of implementing the NWPR and its clear

14  lines of regulation and exclusion are greater than the foregone benefits. *See* EA at xiv-xxiii. The

15  Agencies' efficient administration of the NWPR relies on a predictable and uniform application

16  of the rule. *Id.* Removing portions of the NWPR undermines the Agencies' ability to carry out

17  these policies.

18         The government has a "public interest" in the efficient administration of laws. *E.g.*, *E. Bay*

19  *Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1281-82 (9th Cir. 2020) ("The government has a

20  compelling interest in ensuring that injunctions—such as the one granted here—do not undermine

21  separation of powers by blocking the Executive's lawful ability" to administer its laws); *Sierra*

22  *Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 43 (D.D.C. 2013) (denying a preliminary

23  injunction when "the public has an interest in regulatory efficiency" that comes with a uniform

24  CWA permitting system, which could be undermined by a preliminary injunction).

25         There is also a public interest in respecting the comity of various pending challenges

26  throughout the country and orders denying motions to preliminarily enjoin the NWPR. *See Nat'l*

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

*Ass'n of Mfrs.*, 138 S. Ct. at 633-34 ("[E]ven if Congress sought to ensure national uniformity [under the Clean Water Act], it did not pursue that end at all costs"). Granting Plaintiff's request to enjoin portions of the NWPR on a nationwide basis effectively preempts the separate consideration of these questions by co-equal courts. Indeed, one court in the Northern District of California has already denied a motion to preliminarily enjoin the NWPR on a nationwide basis. *California*, No. 3:20-cv-03005, 2020 WL 3403072. In *California*, 23 states intervened on behalf of the Agencies and opposed a nationwide injunction of the NWPR. *See* No. 3:20-cv-03005, at ECF No. 107. It would be in the public interest to deny Plaintiff's motion for preliminary injunction.

Plaintiff claims that the balance of harms and public interest weigh in its favor because certain provisions of the NWPR at issue are unlawful. Mot. at 34. As discussed above, Plaintiff has no likelihood of success on the merits and has suffered no irreparable harm. Regardless, this argument conflates the "likelihood of success" element of a preliminary injunction analysis with the balance of harms/public interest element. Accordingly, the public interest in an efficient and uniform administration of the NWPR outweighs the non-existent harms Plaintiff purports here.

**V.     Even if Preliminary Injunctive Relief Is Awarded, the Relief Proposed by Plaintiff Is Overbroad and Not Appropriately Tailored.**

While inconsistent regulatory regimes are disruptive, any injunctive relief must still be no more extensive to a defendant than necessary to provide complete relief to plaintiffs. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995). The "limited purpose" of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction "must be narrowly tailored to remedy the specific harm shown." *City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018).

Here, no injunctive relief is warranted but, even if it were, Plaintiff's request to enjoin portions of the NWPR on a nationwide basis, Mot. at 7, is overly broad and should be rejected.

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

34

To begin with, nationwide relief is generally inappropriate. *See California v. Azar*, 911 F.3d 558, 582-84 (9th Cir. 2018) (reversing district court grant of nationwide relief); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (questioning district courts' authority to enter nationwide injunctions). And, to get such relief, Plaintiff needs to proffer facts to support a nationwide scope. *City & Cty. of S.F.*, 897 F.3d at 1244 (9th Cir. 2018) (vacating nationwide injunction because record does not support its scope).

Plaintiff fails to meet this high bar. It offers *no* facts or evidence in support of its request for nationwide relief. In fact, it offers no explanation as to why it believes the NWPR should be enjoined in part on a nationwide basis (as opposed to a more tailored basis, such as enjoining the purportedly offending NWPR provisions on a more localized level).

Furthermore, Plaintiff's requested relief does not return to the status quo *ante*. In addition to excising portions of the NWPR, Plaintiff demands one of three injunctive remedies: (i) prohibiting the Agencies from regulating non-abutting wetlands and intermittent tributaries at all; (ii) limiting the Agencies from regulating non-abutting wetlands and intermittent tributaries unless the Agencies have conducted a case-specific significant nexus test; or (iii) prohibiting the Agencies from regulating all non-navigable tributaries and adjacent wetlands. *See* Mot. at 28-30. Each is contrary to the status quo *ante*. As explained *supra*, *see* Argument Part II.A-B, each of these proposals seek to prohibit the regulation of some water features Supreme Court case law has otherwise held the Agencies could regulate. In other words, none of the three proposed remedies attempt to return to the status quo *ante—i.e.*, the Repeal Rule and the pre-2015 Rule regime, including the "significant nexus" standard set forth in Justice Kennedy's *Rapanos* concurrence—and should be rejected accordingly.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary injunction.

Dated: July 7, 2020                                      Respectfully submitted,

/ / /

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Of counsel:*
MATTHEW Z. LEOPOLD
*General Counsel*
DAVID FOTOUHI
*Principal Deputy General Counsel*
U.S. Environmental Protection Agency
Washington, DC

CRAIG R. SCHMAUDER
*Deputy General Counsel*
U.S. Department of the Army

DAVID. R. COOPER
*Chief Counsel*
U.S. Army Corps of Engineers

JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*
Environment and Natural Resources

/s/ *Hubert T. Lee*

HUBERT T. LEE
SONYA J. SHEA
*Trial Attorneys*
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-1806 (Lee)
(303) 844-7231 (Shea)
Hubert.lee@usdoj.gov
Sonya.Shea@usdoj.gov

COUNSEL FOR DEFENDANTS

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

36

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on July 7, 2020, I filed the foregoing using the Court's CM/ECF

3

system, which will electronically serve all counsel of record registered to use the CM/ECF

4

system.

5

6

                                    /s/ *Hubert T. Lee*

7

                                    Hubert T. Lee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Opposition to Plaintiff's Second
Motion for Preliminary Injunction
2:19-CV-0569-JCC

U.S. Dept. of Justice/ENRD
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1806