Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

|  |  |
|---|---|
| WASHINGTON CATTLEMEN'S ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, in his official capacity as acting administrator of the Environmental Protection Agency; UNITED STATES ARMY CORPS OF ENGINEERS; and R.D. JAMES, in his official capacity as Assistant Secretary for Civil Works, Department of the Army, | ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| PUGET SOUNDKEEPER ALLIANCE, IDAHO CONSERVATION LEAGUE, and SIERRA CLUB, | ) ) ) ) |
| Defendant-Intervenors. | ) |

Civil Action No. 2:19-cv-00569-JCC

**PLAINTIFF'S REPLY IN SUPPORT OF SECOND MOTION FOR PRELIMINARY INJUNCTION**

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:
July 24, 2020

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

I.    Cattlemen's Has Standing and Its Claims Are Ripe ......................................... 1

II.   Cattlemen's Will Succeed on the Merits ........................................................... 2

III.  Cattlemen's Members Suffer Ongoing and Imminent Irreparable Harm ........... 8

IV.   Balance of Equities and the Public Interest Favor the Injunction..................... 13

CONCLUSION................................................................................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 16

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*                                      i

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*,
    893 F. Supp. 301 (D.N.J. 1995) ..................................................................12

*Boumediene v. Bush*, 553 U.S. 723 (2008) ..........................................................13

*Bowsher v. Synar*, 478 U.S. 714 (1986) ...............................................................12

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) .................................................13

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) ...................................................................11

*Citicorp Servs., Inc. v. Gillespie*,
    712 F. Supp. 749 (N.D. Cal. 1989) ...........................................................12

*City & Cty. of S.F. v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) .................................................................13

*Cloud Peak Energy Inc. v. United States Dep't of Interior*,
    415 F. Supp. 3d 1034 (D. Wyo. 2019).................................................13, 14

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ................................................14

*E. Bay Sanctuary Covenant v. Trump*,
    950 F.3d 1242 (9th Cir. 2020) .................................................................14

*Freytag v. Comm'r*, 501 U.S. 868 (1991) ............................................................13

*Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018) ..................................13

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)..........................7, 12

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*,
    545 U.S. 967 (2005).................................................................................3

*PPL Montana, LLC v. Montana*, 565 U.S. 576 (2012)..........................................7

*Rapanos v. United States*, 547 U.S. 715 (2006)............................................2-7, 14

*Sackett v. E.P.A.*, 566 U.S. 120 (2012) .................................................................4

*Sassman v. Brown*, 73 F. Supp. 3d 1241 (E.D. Cal. 2014) ..................................11

*Solid Waste Agency of Northern Cook Cty. v. Army Corps of Engineers*, 531 U.S.
    159 (2001)...............................................................................................7

*Texas v. United States Envtl. Prot. Agency*,
    No. 3:15-CV-00162, 2018 WL 4518230 (S.D. Tex. Sept. 12, 2018) ............14

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*
    ii
    *Pacific Legal Foundation*
    *930 G Street*
    *Sacramento, California 95814*
    *(916) 419-7111*

*U.S. Army Corps of Engineers v. Hawkes Co., Inc.*,
   136 S. Ct. 1807 (2016) ................................................................10

*United States v. Davis*,
   825 F.3d 1014 (9th Cir. 2016) ............................................. 2-3, 4

*United States v. Robertson*,
   875 F.3d 1281 (9th Cir. 2017), *cert. granted, judgment vacated on other*
   *grounds*, 139 S. Ct. 1543 (2019) ..............................................3, 4

**Statute**

33 U.S.C. § 1251(b) ........................................................................7

**Other Authorities**

33 C.F.R. § 328.3(e) (1987) ...........................................................8

85 Fed. Reg. 22,250 (Apr. 21, 2020) .........................................8, 9

Post-*Rapanos* Guidance, *available at*
   https://www.epa.gov/sites/production/files/2016-
   02/documents/cwa_jurisdiction_ ...............................................9

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*                    iii           *Pacific Legal Foundation*
                                                              *930 G Street*
                                                              *Sacramento, California 95814*
                                                              *(916) 419-7111*

**INTRODUCTION**

Plaintiff Washington Cattlemen's Association's (Cattlemen's) Second Motion for Preliminary Injunction, Dkt # 77 (Motion), demonstrates that Plaintiff has standing and meets the four criteria for a preliminary injunction against the intermittent tributary and non-abutting wetland provisions of the Navigable Waters Protection Rule (Rule or NWPR). Neither the Defendant Agencies nor Intervenors successfully refute standing or the propriety of an injunction against the offending provisions. The Court should grant the injunction.

**I.     Cattlemen's Has Standing and Its Claims Are Ripe**

The Agencies contend that Cattlemen's claims against the two challenged provisions are not ripe because there is no catalog of projects with timetables presented with the Motion. This is incorrect. Cattlemen's declarations establish that intermittent tributaries and non-abutting wetlands are common features on member farms and ranches throughout Washington. Supplemental Sam Ledgerwood Declaration ¶ 7; Supplemental Vic Stokes Declaration ¶¶ 10-14.[1] The declarations also show that Cattlemen's members frequently perform regulated activities in these features that are regulated by the Rule. Supplemental Sam Ledgerwood Declaration ¶¶ 2-9; Supplemental Vic Stokes Declaration ¶¶ 2-14. The evidence is that these non-exempt activities occur frequently, now and on an ongoing basis, in intermittent tributaries regulated by the NWPR. Given the detail in both the Stokes and Ledgerwood Supplemental Declarations, the Agencies ignore the evidence in arguing that no such detail is provided. In this evidentiary context, the lack of a spreadsheet of planned projects that the Agencies would prefer is not relevant to whether

---

[1] Intervenors argue that any declarations filed earlier in this litigation cannot be relied on at this stage of the litigation. Intervenors' Opposition at 9. But Intervenors provide no support for the peculiar argument that a party cannot rely on earlier declarations to establish common facts. The Agencies argue that the facts set forth in Plaintiff's declarations "did not arise out of the NWPR" and are thus not applicable. This has the relationship between facts and the law backwards. The facts attested to are that Plaintiff's members' properties contain intermittent drainages, in which those members carry out ongoing farming, ranching, erosion management, and restoration operations. The NWPR illegally applies to these non-exempt actions in intermittent tributaries in the same way that the 2015 Rule illegally applied to these actions in both intermittent and ephemeral streams. The vintage of the regulation does not change the facts on the ground, which remain germane to this motion as much as they were to the prior one.

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

Cattlemen's members are regulated and harmed by the NWPR. As a result of this combination of regulated water features and regulated activities, Cattlemen's members are subject to the challenged provisions of the Rule *now*, not in some speculative future. They must choose *now* to either forego otherwise lawful and perfectly routine activities such as plowing and planting crops, erosion and flood control, and related farm and ranch operations, or spend two years and a quarter-million dollars seeking permits, or act without permits and face crippling fines and prison. Supplemental Vic Stokes Declaration ¶ 4.

Even as to future operations, two factors combine to make the injuries imposed by the Rule imminent so as to make the claims ripe: (1) the exigent nature of plowing and planting decisions and related work like erosion and flood control and other activities that respond to rapidly changing weather conditions that may occur any time, as the District of Oregon recognized when issued a preliminary injunction against the 2015 Rule, *see* Dkt # 77-3 at 37:24-38:5 ("Well, Mr. Martin has listed a number of things he typically would like to do depending on circumstances, and those circumstances can change rapidly. If we got a heavy rain or anything else that started erosion, he might want to plow to prevent erosion that night."), and (2) the two-year, quarter-million dollar permitting effort that is necessary to "legalize" otherwise routine, annual, and ongoing farming operations that need to take place sooner than two years in the future. Supplemental Vic Stokes Declaration ¶ 4.

Cattlemen's claims are ripe because the illegal regulation of their members' property and illegal restrictions on their otherwise lawful use of that property are occurring now, not in some speculative future.

## II.    Cattlemen's Will Succeed on the Merits

Contrary to almost the entirety of the Agencies' arguments on this element, this is not a *Chevron*/*Brand X* case. The dispositive issue in this motion is what the precedential effect of the *Rapanos* decision is. Cattlemen's argues, Motion at 15-28, that the plurality is the precedential holding of *Rapanos* under the Ninth Circuit's controlling approach to *Marks* and the effect of *United States v. Davis* in abrogating *City of Healdsburg*. If this is correct, then the unambiguous

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*

2

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

text of the Clean Water Act prevents regulation of intermittent tributaries or non-abutting wetlands. *Rapanos v. United States*, 547 U.S. 715, 739 (2006). None of the Agencies' discussion of *Chevron* or *Brand X* is applicable to the case. If the statute is unambiguous in excluding intermittent tributaries and non-abutting wetlands, as the *Rapanos* plurality holds, then *Chevron* and *Brand X* are not available to salvage the Agencies' decision to regulate them. *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982 (2005). Since the application of *Brand X* in particular turns on whether the prior judicial interpretation of the statute identified an unambiguous meaning, *id*., this Court must resolve the question whether the plurality, which reads the statute as unambiguous on the salient point, is controlling, *see Rapanos*, 547 U.S. at 739 ("on its only plausible interpretation"). If the plurality does control on the issues of regulating intermittent tributaries and non-abutting wetlands, *Brand X* and *Chevron* have no further role in the case.

The Agencies do not strongly dispute Cattlemen's argument that under *Marks* the plurality is the holding of *Rapanos*. They point to the few Circuits which have concluded incorrectly that *Marks* cannot be applied. Agencies' Opposition at 16. As discussed in Cattlemen's Motion at 29, three Circuits conclude (1) that *Marks* cannot be applied (a logical but incorrect possibility), and (2) that since *Marks* cannot be applied, both the plurality and concurrence can be relied upon (an impossibility under Ninth Circuit law). These Circuits are in error as to both conclusions. Motion at 29. Under Ninth Circuit law, if neither opinion is the holding, then there is no holding. *See United States v. Davis*, 825 F.3d 1014, 1024 (9th Cir. 2016). So, it is necessary for the Court to apply *Marks* if it can, in the manner that the Ninth Circuit applies it. The Motion capably demonstrates that under that analysis, the plurality is the holding. Motion at 12-28. The Agencies provide no alternative *Marks* analysis to dispute it; they don't even explain why the Circuits that have chosen the concurrence under *Marks* are correct to have done so.

Intervenors offer a somewhat more substantive response on this issue, but still go astray in several significant respects. Intervenors' Opposition at 17-20. First of all, Intervenors point to the Ninth Circuit's decision in *United States v. Robertson*, 875 F.3d 1281, 1292 (9th Cir. 2017),

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*

3

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

*cert. granted, judgment vacated on other grounds*, 139 S. Ct. 1543 (2019), but Intervenors correctly note that this case was vacated[2] and therefore cannot be relied upon as Ninth Circuit precedent. Intervenors also rely heavily on the same Circuit Court decisions which apply both the *Rapanos* plurality and concurrence, which are wholly inconsistent with the Ninth Circuit's decision in *Davis*. Rather than relying on a decision that was vacated or on out-of-circuit precedent that is incompatible with *Davis*, this Court must apply *Davis* and determine for itself which opinion is controlling. Finally, Intervenors discount as "irrelevant" a series of Supreme Court decisions which consistently cite to the *Rapanos* plurality, but these decisions and especially the Supreme Court's recent *County of Maui* decision cannot be discounted in this fashion, since without exception the Court relied on the *Rapanos* plurality as it grappled with the definition of "point source." *Rapanos*, 547 U.S. at 735-36; *see also* Motion at 13-15. And at the very least, the Supreme Court's *County of Maui* and other decisions should lay to rest the notion that the rationale of the concurrence is somehow the opinion of the Court. *See Sackett v. E.P.A.*, 566 U.S. 120, 124 (2012) (noting that "no one rationale commanded a majority of the Court").

Intervenors also offer several arguments as to why the Rule is lawful even if Justice Scalia's opinion is controlling. But these arguments do not hold up to closer scrutiny. Justice Scalia emphasized that a navigable water must be "relatively permanent" and contain "at bare minimum, the ordinary presence of water." That is incompatible with the Rule which covers any surface water which flows only "during certain times of year" so long as it is "more than in direct response to precipitation." This definition falls short of the plurality's requirements in both frequency and intensity. Under the Rule, a trickle that only runs for a few days or weeks a year beyond a rainfall event would be regulated, even if that trickle could in no way be considered to be "relatively permanent" or contain "the ordinary presence of water." And Intervenors do not even try to explain how a wetland that is connected only in a typical year or is connected through

---

[2] By the Supreme Court, not—as Federal Defendants incorrectly state—by the Ninth Circuit. 139 S. Ct. 1543 (2019).

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

an artificial feature is consistent with Justice Scalia's requirement of a "continuous surface connection" that prevents clear discernment of where the tributary ends and the wetland begins.

For their part, the Agencies make the puzzling claim that the *Rapanos* plurality meant "ephemeral" when it said intermittent, and therefore the government can regulate intermittent tributaries after all, despite the plurality having explicitly said it can't. The plurality cannot be read to support this. *Rapanos*, 547 U.S. at 733-34 (distinguishing ephemeral from intermittent flow); *id.* at 726-27; *id.* at 733 n.6 (citing separate agency definitions of "ephemeral" and "intermittent"). It is simply an exercise in wishful thinking that defies the text of the plurality to say that "intermittent" actually means "ephemeral" in the opinion.

Intervenors also argue that if Justice Kennedy's concurrence applies that the Rule should be upheld. But the Rule fails to explain how any surface water which flows in "more than in direct response to precipitation," even a small trickle, can be said to categorically have a significant nexus to a navigable-in-fact-water. 547 U.S. at 780-81. And it cannot do so since Justice Kennedy required that tributaries "are significant enough . . . to perform important functions for an aquatic system incorporating navigable waters." *Id.* In other words, when Justice Kennedy envisioned regulating waters on a categorical basis, he had "torrents," *id.* at 769, rather than trickles in mind, but the Rule improperly encompasses both.

Rather than engage in Plaintiff's *Marks* analysis, the Agencies claim that the Court should look past *Marks* and instead defer to the Agencies' creative reshuffling of *Rapanos*. Agencies' Opposition at 16. Even if it applied, *Chevron* would not save the two specific provisions of the Rule challenged in this motion. Cattlemen's motion challenges the Rule's universal regulation of all intermittent tributaries and of three categories of non-abutting wetlands. Both of these types of features were at issue in *Rapanos*. Motion at 12-13. The plurality and concurrence agreed that the categorical regulation of all intermittent tributaries could not be sustained under the Act. Motion at 13; *id*. at 21. Yet the Agencies now argue that they can combine different elements of

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

the plurality and concurrence to arrive at "common themes"[3] of both that somehow allows the Agencies to regulate a category that both opinions agreed it could not regulate. Whatever one makes of the *Rapanos* opinions, the result of the case is that the categorical regulation of all intermittent tributaries violates the Act. A regulation which does the exact same thing cannot be a reasonable reading of the Act.

In the Agencies' effort to defend this outcome, they describe their authority to interpret the Act as a broad and standardless power to adopt varying contours along a wide continuum based on numerous policy factors. Agencies' Opposition at 18-19. The output of this process is two meaningless expressions that are said to define the Agencies' authority: "sufficient connection," Agencies' Opposition at 21, and "regular connection," *id*. at 24. In effect, the Agencies claim that the limiting principle in the Clean Water Act is whether a feature has either a "sufficient" or "regular" connection to another regulated water body. This might be the only possible alternative to Justice Kennedy's concurrence that is even more malleable than the "significant nexus" test. Nor do the Agencies ever explain how regulating those features with only a sufficient or regular connection would satisfy either the plurality, which rejected such an approach outright, or Justice Kennedy, who insisted that connections have more substance to them than this. Motion at 17-22; *Rapanos*, 547 U.S. at 781-82 (Kennedy, J., concurring).

As explained in the Motion, the adoption of vague standards like sufficient or regular connection, and their superficial similarity to the significant nexus test, also introduces constitutional infirmities which independently reinforce the *Marks*-based argument that the *Rapanos* plurality is the best available way to read the limits of the Act. Motion at 14-17. Any interpretation that would extensively regulate a wide range of non-navigable tributaries or non-abutting wetlands raises issues under the Commerce Clause and the Tenth Amendment as well as the Due Pprocess Clause and the non-delegation doctrine.

---

[3] The Agencies' approach to *Rapanos* turns it from a decision of the Supreme Court of the United States with one and only one precedential holding into a faculty symposium, from which an agency may self-interestedly harvest whatever combination of "elements" or "themes" are useful to justify a desired outcome. This is not how Supreme Court decisions bind agencies.

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*

6

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

The Agencies argue that neither Justice Kennedy's concurrence nor the Rule raise constitutional concerns because the CWA is a permissible exercise of Federal jurisdiction pursuant to the Commerce Clause. Agencies' Opposition at 17. But the CWA itself declares that as matter of policy that it is intended to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution," 33 U.S.C. § 1251(b), and the Supreme Court has repeatedly recognized that an overly broad interpretation of the CWA would contradict that purpose and potentially violate the Commerce Clause or the Tenth Amendment. *Solid Waste Agency of Northern Cook Cty. (SWANCC) v. Army Corps of Engineers*, 531 U.S. 159, 172 (2001); *Rapanos*, 547 U.S. at 737-38.[4]

The Commerce Clause on its face extends only to waters that are the "channels" or "highways" of interstate commerce, or in other words waters that are navigable in fact. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012). As the plurality explained in *Rapanos*, the Government's more expansive interpretation of "waters of the United States" pushes up against "the outer limits of Congress's commerce power and raises difficult questions about the ultimate scope of that power." *Rapanos* 547 U.S. at 738. Any attempt to stretch the definition of "waters of the United States" beyond "relatively permanent, standing, or continuously flowing bodies of water" runs headlong into those "difficult questions." *Id.* As discussed above, the Rule goes beyond the guidelines set by the plurality and even by Justice Kennedy's standard. It therefore violates the Commerce Clause or at least "presses the envelope of constitutional validity," *id.*, and squarely runs into those "difficult questions" that the Supreme Court sought to avoid in *Rapanos*.

Relatedly, the Rule also raises significant federalism and Tenth Amendment concerns. When it enacted the CWA, Congress did not intend to establish federal control over traditional state and local government function such as local decisions involving water resources or land use

---

[4] Intervenors dispute whether protecting federalism is a "purpose" of the CWA or merely its "process." Intervenors' Opposition at 29. This is largely a distinction without a difference. It is clear that protecting and supporting the role of states in managing land and water resources was one of the policies that the CWA was intended to further. 33 U.S.C. § 1251(b).

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

and planning. Unfortunately, that is precisely the effect of the Intermittent Tributary and Non-abutting Wetland Provisions. The Army's permitting regime applied to farming and related land uses on private farms and ranches directly conflicts with local land use administration and amounts to a de facto federal veto.

Finally, the Agencies completely fail to respond to Plaintiff's Due Process Clause and Non-Delegation arguments despite clearly being aware of these arguments. *See* Agencies Opposition at 17 (noting correctly that Cattlemen's argues that "Justice Kennedy's concurrence implicates Tenth Amendment, Due Process, Non-Delegation, and Commerce Clause concerns"). As interpreted by Justice Kennedy, and by the Agencies in this case, the CWA gives the Agencies so little direction that it completely fails to provide the general public with adequate notice of the conduct that may be unlawful under the CWA. This is a serious due process problem since individuals may be subject to crippling fines or even criminally prosecuted for a violation of the CWA. And a law, or interpretation of a law, that would allow an agency to determine for itself whether or not a tiny intermittent trickle is a "navigable water" would similarly violate the non-delegation doctrine. Because the plurality opinion avoids these pitfalls, its interpretation should be adopted. And in either event, the Rule is incompatible with the CWA and the Constitution. Cattlemen's has demonstrated its likelihood of success on the merits.

### III.    Cattlemen's Members Suffer Ongoing and Imminent Irreparable Harm

Several of EPA's arguments related to the harm element and to the status quo suffer from the erroneous assertion that the Navigable Waters Protection Rule regulates the same water bodies that the prior regulation did and no more. Accordingly, the Agencies argue that the Rule does not harm Cattlemen's and that any injunction will not provide meaningful relief. This is false.

As to intermittent tributaries, the prior regulations only applied to channels with a bed and bank and an ordinary high-water mark. *See* 33 C.F.R. § 328.3(e) (1987). The new Rule does not require any of these features. 85 Fed. Reg. at 22,292. And, under the prior regulations and related interpretive guidance, the Agencies would only regulate intermittent (i.e. "not relatively

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

permanent") tributaries if they had a significant nexus. Post-*Rapanos* Guidance at 1.[5] The NWPR does away with this limitation. 85 Fed. Reg. at 22,281 (rescinding post-*Rapanos* Guidance). So, the new Rule regulates more intermittent tributaries than the old one did. This is also true of non-abutting wetlands. The provisions challenged in the Motion expand Clean Water Act regulation in these two categories. As a result, Cattlemen's members are subject to new regulations of water features not regulated by the most recent prior regulations.

This fact undermines the Agencies' argument that Cattlemen's are not harmed by the Rule in any way that they were not harmed by the prior version of the regulations. Plaintiff's harm derives at least from the fact that the new Rule regulates more broadly than the old one, in the specific areas of intermittent tributaries, and the three challenged categories of non-abutting wetlands. This fact also undermines Intervenors' peculiar suggestion that what Plaintiff seeks is a "mandatory" injunction which would require a heightened showing. Intervenors' Opposition at 12. Plaintiff merely seeks an injunction to prevent the Agencies and others from enforcing the Rule against its members. That is consistent with the status quo and does not compel the Agencies to take any action.

From there, the above discussion of ripeness and injury is equally applicable to the element of harm under the injunction analysis. The Agencies repeat the incorrect argument that the injury suffered by Cattlemen's is too speculative to constitute an imminent and irreparable injury because Cattlemen's members cannot point to particular projects that will require permitting. Agencies' Opposition at 27. As the District of Oregon recognized when it issued a preliminary injunction against the 2015 Navigable Waters Rule, farming and ranching activities frequently cannot be planned far in advance because they are often done in response to unexpected conditions such as inclement weather or excess rainfall. *See* Dkt # 77-3 at 37:24-38:5 ("Well, Mr. Martin has listed a number of things he typically would like to do depending on circumstances, and those circumstances can change rapidly. If we got a heavy rain or anything else that started

---

[5] *Available at* https://www.epa.gov/sites/production/files/2016-02/documents/cwa_jurisdiction_following_rapanos120208.pdf.

erosion, he might want to plow to prevent erosion that night."). As shown in the Supplemental Declarations of Sam Ledgerwood and Vic Stokes, Cattlemen's members frequently plow or grow crops and do related work in the riparian zones of intermittent streams[6] which the 2020 Rule regulates. Supplemental Sam Ledgerwood Declaration ¶¶ 2-9; Supplemental Vic Stokes Declaration ¶¶ 2-14. And by the time Cattlemen's members may become aware of some needed action on their property, it is likely too late to seek a permit since the process is time-intensive (two years on average) and extremely expensive (more than $250,000 on average). Supplemental Vic Stokes Declaration ¶¶ 4-14.

Furthermore, because of the nature of the activities that Cattlemen's members engage in, an injunction will have an immediate and concrete impact. As the District of Oregon noted, a variety of activities that Cattlemen's members routinely do "would be subject to . . . regulatory enforcement without an injunction and would be doable with such an injunction." *See* Dkt # 77-3 at 38:8-10.

Moreover, there is nothing speculative about the risk that Cattlemen's face. Every time they use their property, they face the serious risk of crippling fines or even criminal liability. The Agencies have aggressively enforced the Clean Water Act, up to and including bringing criminal charges against property owners for the ordinary use of their property. *See U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1815 (2016). And the Agencies have also very narrowly construed exceptions for normal farming and ranching activities which place Cattlemen's members in jeopardy every time they use their property. Declaration of Vic Stokes Vic Stokes ¶ 7; Exhibit A to Declaration of Anthony François, Dkt # 77-2 (Army enforcement staff testimony on narrow scope of farming exemption).[7] Furthermore, citizen suits are a very real

---

[6] Intervenors argue that Mr. Ledgerwood only has ephemeral streams, but his Supplemental Declaration states that his hillside pastures are "drained by tributaries that are either ephemeral or intermittent, depending on conditions." Supplemental Declaration of Sam Ledgerwood ¶ 7. So there is clear evidence in the record that he regularly works in intermittent tributaries on his property. Further, the streambed restoration work described in his Supplemental Declaration at paragraph 8 requires ongoing maintenance.

[7] Intervenors are incorrect to argue that enforcement actions like *U.S. v. LaPant* and *Duarte Nursery v. Army Corps* are irrelevant because they were (Duarte Nursery) or are being (LaPant)

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*                    10

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

and continual threat due to the very active efforts of Intervenors and other similarly situated organizations.

The cases relied upon by the Agencies do not support their argument. In *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988), commercial fishing boat owners challenged a requirement that they place a female observer onboard their tuna boats. The only injury claimed by the Owners was that the presence of a female observer on board would at some point interfere with fishing operations based on the utterly speculative risk of harassment or physical assault. Accordingly, the Ninth Circuit concluded that any risk was "too remote and speculative to constitute an irreparable injury meriting preliminary injunctive relief." *Id.* As already discussed, that situation is completely different from the situation that Cattlemen's is placed in as a result of the 2020 Rule, as the application of the 2020 Rule to their property and activities is neither remote nor speculative.

In *Sassman v. Brown*, 73 F. Supp. 3d 1241, 1251 (E.D. Cal. 2014), a prisoner sought admission into an alternative custody program which was largely open only to female prisoners. Unlike Cattlemen's, the prisoner in that case sought a mandatory injunction requiring consideration of his application. Accordingly, his request for an injunction was "subject to a heightened burden of proof." *Id.* at 1247. Cattlemen's seeks an injunction prohibiting the Agencies from enforcing the unlawful provisions of the 2020 Rule and not an injunction compelling the Agencies to take action. So there is no such heightened burden of proof here. Moreover, since admission into the program in *Sassman* was fully "discretionary," an injunction would not have guaranteed that the prisoner would be accepted into the program. In contrast, an

---

prosecuted under the immediately previous version of the regulations. The point of these cases, and the concerns they raise for Cattlemen's members, is the narrow and unpredictable nature of the exemption for certain farming activities. And, the United States takes the position in its ongoing enforcement case against Jack LaPant that the new Rule makes little or no difference to the scope of regulated waters on rangeland. *See United States v. LaPant*, N.D. Cal. Case no. 2:16-cv-01498-KJM-DB, United States' Opposition to Defendant's Motion for Summary Judgment at 6 nn.2-3, Dkt. 128.

Pl.'s Reply ISO 2d Mot. for Preliminary Injunction
Case No. 2:19-cv-00569-JCC

11

*Pacific Legal Foundation
930 G Street
Sacramento, California 95814
(916) 419-7111*

injunction here would guarantee that Cattlemen's would not be subject to the unlawful provisions of the 2020 Rule.

Wherever the regulation applies, it imposes restrictions on what may be done with the members' private property. The activities the Rule restricts are commonplace—plowing and growing crops, erosion and flood control, construction and other activities that go on routinely on farms and ranches in Washington. Whether planned in advance or taken in response to inclement weather, market conditions, or other unforeseen events, the regulation limits what members can do, and forces them to undergo a multi-year quarter-million-dollar-plus permit application or face enforcement, or forego using their property. These are all harms that are experienced now or imminently, particularly in relation to the time it takes to get the permit and the multi-year litigation timetable that has characterized recent challenges to prior versions of the regulations. *See* Supplemental Declaration of Vic Stokes ¶¶ 4-14.

Intervenors and the Agencies are also wrong about the presumption of injury that attaches to the constitutional harms identified. Because Cattlemen's is suffering an ongoing constitutional injury, it does not need to further establish that the harm it suffers will be irreparable. *See Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 893 F. Supp. 301, 309 (D.N.J. 1995); *Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989). The Agencies argue that "structural constitutional violations" do not constitute irreparable harm because these rights are not sufficiently "personal" in nature. But the two cases that the Agencies rely on involve the Supremacy Clause, which only indirectly protects individual liberty. In contrast, limitations on federal power such as the Commerce Clause are directly intended to protect individual liberty. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 554 (2012) (noting that limits on the Commerce Clause prevent Congress from "reachi[ng] beyond the natural extent of its authority, 'everywhere extending the sphere of its activity and drawing all power into its impetuous vortex'" (quoting The Federalist No. 48 (J. Madison))). *See also Bowsher v. Synar*, 478 U.S. 714, 721 (1986) ("[t]he declared purpose of separating and dividing the powers of government, of course, was to 'diffus[e] power the better to secure liberty'" (quoting *Youngstown*

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*

12

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*

*Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring))). *See also Boumediene v. Bush*, 553 U.S. 723, 742 (2008) (stating that the separation of powers "serves not only to make Government accountable but also to secure individual liberty"); *Freytag v. Comm'r*, 501 U.S. 868, 870 (1991) ("The leading Framers of our Constitution viewed the principle of separation of powers as the central guarantee of a just government."). Accordingly, no further proof of irreparable harm is needed.[8] Cattlemen's has established that its members will continue to suffer ongoing and imminent irreparable harm absent an injunction.

## IV.   Balance of Equities and the Public Interest Favor the Injunction

The Agencies' objections related to the status quo are addressed by Cattlemen's point above that the new Rule regulates intermittent tributaries more broadly than the prior regulations and guidance. Plaintiff is entitled to seek prohibitory injunctive relief against the imposition of new regulations that are clearly illegal and which cause irreparable harm. Each of the injunctive remedies that Plaintiff puts forward would "remedy the specific harm shown." *City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018).

The Agencies also argue against what they envision as a patchwork of injunctions resulting from this Court enjoining the two provisions of the Rule as to Plaintiff and its members. But the Agencies would object to a nationwide injunction even more vehemently. Plaintiff has not sought to wade into that particular fray, because it is not necessary to provide complete relief to Plaintiff's members. Any local confusion within Washington can be avoided by enjoining the two provisions throughout the state. But if the Agencies prefer a single nationwide rule, the Court

---

[8] If further proof is required, then Cattlemen's nevertheless has offered it, since any costs incurred as a result of the enforcement of the 2020 Rule would be unrecoverable because of sovereign immunity and are therefore irreparable. *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018) (noting that "no avenue exists to recoup those losses because the United States has not waived sovereign immunity from suits seeking these sorts of damages"); *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (explaining that compliance costs can be irreparable harm when the injured party would "not be able to recover monetary damages"); *see also Cloud Peak Energy Inc. v. United States Dep't of Interior*, 415 F. Supp. 3d 1034, 1042 (D. Wyo. 2019) (collecting cases and concluding that courts "prefer finding monetary costs to be irreparable harm in cases where the costs cannot later be recovered").

could consider a nationwide injunction against the challenged provisions. *See Doe #1 v. Trump*, 957 F.3d 1050, 1070 (9th Cir. 2020) (upholding a national injunction because of the need for nationwide uniformity and in order avoid "needlessly complicat[ing] agency and individual action").

Moreover, the Ninth Circuit has held that when an agency rule violates "plain congressional intent" or is otherwise unlawful, an agency's interest in efficiency is not entitled to "much weight." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1282 (9th Cir. 2020).[9] Moreover, neither the Agencies nor the public would benefit from "expend[ing] valuable resources and time operationalizing a rule that may not survive judicial review." *Texas v. United States Envtl. Prot. Agency*, No. 3:15-CV-00162, 2018 WL 4518230, at *1 (S.D. Tex. Sept. 12, 2018).

For its part, Intervenors fail to show any concrete harm that would flow to downstream navigability or other water quality factor if an injunction were issued to protect Cattlemen's members' right to use their own property for their routine farming and ranching uses. *See* Supplemental Declaration of Sam Ledgerwood ¶¶ 15-16 (no public access to intermittent tributaries on his ranch, no harm to downstream uses of tributary streams); Supplemental Declaration of Vic Stokes ¶¶ 15-16 (same). An injunction would leave in place most of the environmental protections of the Rule and would be fully compatible with the "plain Congressional intent" of the Clean Water Act. And in any event, as demonstrated above, under the controlling *Rapanos* plurality, the Agencies have no legal authority to continue regulating intermittent tributaries or non-abutting wetlands, and had no legal authority to regulate, as their prior regulations did, ephemeral drainages and more far-flung wetlands. Absent legal authority to

---

[9] In *E. Bay Sanctuary Covenant*, the chief case relied upon by the Agencies, a panel of the Ninth Circuit concluded that the public interest weighed "sharply" in favor of an injunction even though the "efficient administration of the immigration law at the border" was a particularly "weighty" state interest since "control over matters of immigration is a sovereign prerogative." *Id.* Indeed, it did so even though an injunction raised separation of powers concerns of its own. *Id.* In contrast, the Agencies' interest in being able to enforce a subset of the 2020 Rule against uses of property that are highly attenuated from traditional navigable waters is not nearly as "weighty."

regulate, their decision not to regulate is a non-discretionary decision for which environmental review is a not factor the agency must consider.

## CONCLUSION

Cattlemen's has standing and has demonstrated its entitlement to preliminary injunctive relief. Plaintiff respectfully asks the Court to issue the injunction.

DATED: July 24, 2020.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

s/ Anthony L. François
ANTHONY L. FRANÇOIS, Cal. Bar # 184100*
DANIEL M. ORTNER, Va. Bar # 89460*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Fax: (916) 419-7477
Email: AFrancois@pacificlegal.org
Email: DOrtner@pacificlegal.org
*Admitted Pro Hac Vice

s/ Ethan W. Blevins
ETHAN W. BLEVINS, WSBA # 48219
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (206) 619-8944
Email: EBlevins@pacificlegal.org

*Counsel for Plaintiff Washington Cattlemen's Association*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2020, I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will cause a copy to be served upon counsel of record.

By /s/ Ethan W. Blevins
ETHAN W. BLEVINS

*Pl.'s Reply ISO 2d Mot. for Preliminary Injunction*
*Case No. 2:19-cv-00569-JCC*

16

*Pacific Legal Foundation*
*930 G Street*
*Sacramento, California 95814*
*(916) 419-7111*